|,BAGNERIS, Judge.
This is a suspensive appeal from a judgment of the trial court terminating a mother’s parental rights to her three children. Finding no manifest error in the trial court’s determination, we affirm.

*630
FACTS AND PROCEDURAL HISTORY

M.T.[1] is the Mother of the three minor children involved in this matter. On May 2, 1996, a Bill of Information was filed in Criminal District Court, Orleans Parish, alleging that on January 21, 1996, M.T. committed acts of cruelty against one of her minor children. Subsequently, on July 15, 1996, M.T. pled guilty in Orleans Parish Criminal Court, Section F, Case Number 382-909, to one count of Cruelty to a Juvenile pursuant to La. R.S. 14:93. She was sentenced to 5 years incarceration at the Louisiana Correctional Institute for Women in St. Gabriel, Louisiana. M.T. is presently located in St. Gabriel.
The record in this case indicates that Christopher Shilow was listed as the legal father of all three children; however, he executed Voluntary Acts of Surrender for Adoption in relation to all three children on October 15, 1998. Christopher Shilow is not the biological father of any of the children. Rather, | ¡.testimony elicited at trial revealed that the biological father of the two older children is Carl Turner. Both Mr. Turner and M.T. acknowledged his paternity of the two older children in court. M.T. also testified that the alleged biological father of the youngest child is a man by the name of Harrison Winfield[2]. Mr. Winfield has taken no action to acknowledge paternity of this child in any way, and his whereabouts are presently unknown.
On April 29, 1999, the State of Louisiana, Department of Social Services, Office of Community Services (“DSS/OCS”) filed a Petition for Termination of Parental Rights against M.T. under Louisiana Children’s Code Article 1015(3). According to Paragraph XII, subsection (a), of the Petition of Termination, M.T.’s misconduct toward the minor child named in the Bill of Information “constituted extreme abuse, cruel and inhuman treatment” as follows:
a) On January 21, 1996, [M.T.] committed cruelty to a juvenile, namely [S.M.S.], by making her kneel on the kitchen floor from Friday afternoon until Sunday evening, while depriving her of food and/or the use of a restroom, as well as choking and beating the child repeatedly with a stick, paddle and chopping block.
b) As a result of this behavior towards [S.M.S.], [M.T.] was convicted of Cruelty to a Juvenile, La. R.S. 14:93, in Orleans Parish Criminal Court Case No. 382-909F on July 15,1996.”
In Paragraph XIV of this same Petition, the State sought termination of Carl Turner and Harrison Winfield’s parental rights under Louisiana Children’s Code Article 1015(4). The State basically argued that for more than six consecutive months, the Fathers failed to provide any monetary, physical or emotional support for the children, essentially abandoning them.
|aAfter trial of this matter, in a Judgment dated July 15, 1999, Judge Ernestine Gray terminated the parental rights of both of the Fathers, as well as those of the Mother, M.T. This termination freed the children for adoption. In her oral reasons for judgment, the juvenile court judge stated as follows:
So the only question before the Court ... was whether or not in this case in this Court’s view, the behavior that the mother was convicted of was of such a nature to warrant termination. Everybody agreed that that was the issue that I was supposed to decide. As I read that, that was the only outstanding issue that was identified. Whether or not the mother’s behavior was so detrimental *631 that her rights should be terminated as to any of the children ... including the child who is the subject of the abuse.
Having heard the testimony in this case and considering the evidence presented by the State, the Court would find that in this case the parental rights of both the mother ... and of the fathers ... should be terminated as to these children, freeing them for adoption.
It is from this ruling that the Mother now appeals.

LAW AND ANALYSIS

In any case to involuntarily terminate parental rights, there are two private interests involved: those of the parents and those of the child. The parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children warranting great deference and vigilant protection under the law, State ex rel. J.A., 99-2905 (La.1/12/00), 752 So.2d 806; Lassiter v. Department of Soc. Servs., 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640(1981), and due process requires that a fundamentally fair procedure be followed when the state seeks to terminate the parent-child legal relationship, State ex rel. J.A., supra; State in Interest of Delcuze, 407 So.2d 707 (La.1981). However, the child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care. State ex rel. J.A., supra; Lehman v. Lycoming County Children’s Services Agency, 458 U.S. 502, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982); see also State in the Interest of S.M., 98-0922 (La.10/20/98), 719 So.2d 445, 452. In balancing these interests, the courts of this state have consistently found the interest of the child to be paramount over that of the parent. State ex rel. J.A., supra; See, e.g., State in the Interest of S.M., 719 So.2d at 452; State in the Interest of A.E., 448 So.2d 183, 186 (La.App. 4 Cir.1984); State in the Interest of Driscoll, 410 So.2d 255, 258 (La.App. 4 Cir.1982).
The State’s parens patriae power allows intervention in the parent-child relationship only under serious circumstances, such as where the State seeks the permanent severance of that relationship in an involuntary termination proceeding. The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional and mental health heeds and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. State ex. rel. J.A., supra; La. Child. Code art. 1001. As such, the primary concern of the courts and the State remains to secure the best interest for the child, including termination 15of parental rights if justifiable grounds exist and are proven. Nonetheless, courts must proceed with care and caution as the permanent termination of the legal relationship existing between natural parents and the child is one of the most drastic actions the State can take against its citizens. The potential loss to the parent is grievous, perhaps more so than the loss of personal freedom caused by incarceration. State ex rel. J.A., supra; State in the Interest of A.E., 448 So.2d at 185.
Title X of the Children’s Code governs the involuntary termination of parental rights. Louisiana Children’s Code art. 1015 provides the statutory grounds by which a court may involuntarily terminate the rights and privileges of parents. The State need only establish one ground, Louisiana Children’s Code art. 1015, but the *632 judge must also find that the termination is in the best interest of the child. Louisiana Children’s Code art. 1039. State ex reí J.A., 'supra; See State in Interest of M.L. & P.L., 95-0045 (La.9/5/95), 660 So.2d 830, 832. Additionally, the State must prove the elements of one of the enumerated grounds by clear and convincing evidence to sever the parental bond. Louisiana Child Code art. 1035(A); State ex rel. J.A., supra; Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982) (holding that the minimum standard of proof in termination of parental rights cases is clear and convincing evidence.).

Assignments of Error

In her first Assignment of Error, M.T. argues that DSS/OCS did not establish its burden of proof under Louisiana Children’s Code Article 1035. M.T. contends that the fact that she pled guilty to a violation of LSA-R.S. 14:93 is not sufficient to establish the clear and convincing standard required for involuntary ^termination of parental rights. Further, M.T. contends that DSS/OCS failed to introduce any evidence other than the certified copies of the criminal court guilty plea and associated conviction documents in order to prove that her parental rights should be terminated.
In its answer to the appeal, DSS/OCS contends that not only did they establish their clear and convincing burden of proof, they exceeded it because M.T.’s guilty plea to a violation of LSA-R.S. 14:93 was an admission beyond a reasonable doubt that she intentionally mistreated or was criminally negligent in the mistreatment of one of her daughters. Further, DSS/OCS argues that M.T.’s conviction is admissible under Louisiana Children’s Code Article 1036(A) and (B), as well as LSA Code of Evidence Article 803(22) and 801(D)(2). We agree with DSS/OCS’ argument.
LSA-R.S. 14:93 provides, in pertinent part, as follows:
§ 93. Cruelty to juveniles
A. Cruelty to juveniles is the intentional or criminally negligent mistreatment or neglect, by anyone over the age of seventeen, of any child under the age of seventeen whereby unjustifiable pain or suffering is cause to said child....
Louisiana Children’s Code Article 1036 provides:
Art. 1036. Proof of parental misconduct
A. The admissibility of the conviction of a parent is governed by the Code of Evidence.
B. A prior conviction may be proved by certified copy of the judgment of conviction or certified copy of the minute entry of conviction.
[[Image here]]
17Louisiana Code of Evidence Article 803(22) provides:
Art. 803. Hearsay exceptions; availability of declarant immaterial.
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
* * *
(22) Judgment of previous conviction. Evidence of a final judgment, entered after a trial or upon a plea of guilty (but not upon a plea of nolo contendere), adjudging a person guilty of a crime punishable by death or imprisonment in excess of six months, to prove any fact essential to sustain the judgment.
After a careful review of the record in this case, we find that DSS/OCS did meet its burden of proving that M.T.’s parental rights should be terminated. The law makes it very clear that DSS/OCS was well within its right to introduce evidence of the Mother’s guilty plea and subsequent conviction of cruelty to one of her minor children in support of its’ involuntary termination of her parental rights. This assignment of error is without merit.
*633 In her second assignment of error, M.T. contends that the trial judge committed manifest error by failing to allow testimony concerning the underlying events leading to her conviction of cruelty to a juvenile. More specifically, M.T. argues that the trial judge committed manifest error by stating that she was “entitled to rely on [the Criminal Court] judgment.” We disagree.
In addition to introducing M.T.’s plea of guilty, during its direct examination of M.T., DSS/OCS obtained M.T.’s own confirmation of the fact that she pled guilty to Cruelty to a Juvenile. The hearing transcript reveals that M.T.’s attorney did not make any objection to this testimony at the time of DSS/OCS’ direct | ^examination of M.T. Rather, prior to the direct examination at a pre-trial conference and after the direct examination, in her closing argument, M.T.’s attorney attempted to argue that the Mother pled guilty because of extenuating circumstances, not necessarily because she was guilty of the offense. The juvenile court judge responded to this argument by stating as follows:
... I don’t think that you can now come in Court arguing something that the lawyer in Criminal Court should have argued. In fact I know you can’t, because I’m not going to allow it. It would be unfair to come in and say because we plead guilty for this reason in this Court and then we want to contest in the Court. The plea is a judicial finding based on the plea, I don’t know how you dealt with it in your mind, you are not going to take it back. Whatever ramification you are entitled to be given to a guilty plea is what you will be given.
When a judge makes a finding you need to go back to that Court and get it overturned. If you don’t do that, I am entitled to give it all of the weight that it desires as a part of that when you plead guilty you admit the underlying facts.
We find that the trial court judge did not commit manifest error by refusing to allow M.T. to collaterally attack the criminal court conviction in these juvenile court proceedings. We further find that because M.T.’s counsel failed to offer any evidence or testimony regarding the underlying facts of M.T.’s abuses conviction, no issue in this regard was reserved for the purposes of appeal. This assignment of error is without merit.
In her third assignment of error, M.T. argues that the State failed to prove that M.T.’s parental rights should be terminated as to her other two children because M.T.’s guilty plea and conviction only involved the child named in the Bill of Information. We disagree.
|nIn the instant case, DSS/OCS sought termination of M.T.’s parental rights under Louisiana Children’s Code Article 1015(3), which provides as follows:
Art. 1015. Grounds
The grounds for termination of parental rights are:
* * :|;
(3) Misconduct of the parent toward this child or any other child of the parent or any other child in his household which constitutes extreme abuse, cruel and inhuman treatment, or grossly negligent behavior below a reasonable standard of human decency, including but not limited to the conviction, commission, aiding or abetting, attempting, conspiring or soliciting to commit any of the following:
(a) Murder.
(b) Unjustified intentional killing.
(c) Aggravated incest.
(d) Rape.
(e) Sodomy.
(f) Torture.
(g) Starvation.
(h) A felony that has resulted in serious bodily injury.
(i) Abuse or neglect which is chronic, life threatening or results in *634 gravely disabling physical or psychological injury or disfigurement.
(j) Abuse or neglect after the child is returned to the parent’s care and custody while under department supervision, when the child had previously been removed for his safety from the parent pursuant to a disposition judgment in a child in need of care proceeding.
(k) The parent’s parental rights to one or more of the child’s siblings have been terminated due to neglect or abuse and prior attempts to rehabilitate the parent have been unsuccessful.
(Emphasis added).
|inThis article very clearly and unambiguously states that if a parent is convicted of misconduct or abuse toward one child, that parent’s parental rights as to all of his or her children can be involuntarily terminated on this basis alone. M.T.’s conviction of cruelty to one of her children was sufficient to justify the involuntary termination of her parental rights as to her other children as well. This assignment of error is of no merit.

CONCLUSION

For the foregoing reasons, the judgment of the juvenile court judge is hereby affirmed.

. In an effort to protect the children's confidentiality, only the initials of the Mother and her children will be used throughout this opinion. All of the children have the initials S.M.S.

. Throughout the record, Mr. Winfield’s last name is spelled with either one “n” or two. For the purposes of consistency, he will be referred to as Harrison Winfield, with one “n”, in this opinion.