# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-1362

## STATE IN THE INTEREST OF P.M. & H.M.

**\*\*\*\*\*\*\*\*\*\***

APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF ACADIA, NO. 4654
HONORABLE KRISTIAN DENNIS EARLES, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***

## JOHN D. SAUNDERS
## JUDGE

**\*\*\*\*\*\*\*\*\*\***

Court composed of John D. Saunders, Oswald A. Decuir, and Marc T. Amy, Judges.

**REVERSED.**

**Annette Fuller Roach**
**15th Judicial District Public Defenders Office**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**COUNSEL FOR APPELLANT:**
    **D. A.**

**Diane Elaine Cote**
**825 Kaliste Saloom Road**
**Brandwine I, Room 218**
**Lafayette, LA 70508**
**(337) 262-1555**
**COUNSEL FOR APPELLEE:**
 **State of Louisiana, Department of Children andFamily Services**

**Brett Anthony Stefanski**
**Attorney at Law**
**P. O. Dreawer 730**
**Crowley, LA 70527-0730**
**(337) 783-7000**
**COUNSEL FOR APPELLEE:**
 **P. M.**
 **H. M.**

**Scott J. Privat**
**Privat & Privat**
**P. O. Box 449**
**Crowley, LA 70527**
**(337) 783-7142**
**COUNSEL FOR APPELLANT:**
 **R. M.**

**SAUNDERS, Judge.**

This case involves the involuntary termination of parental rights of a mother and father of two children under La.Ch.Code art. 1015(5). The trial court found that neither parent substantially complied with the case plan nor was there any reasonable expectation that either parent's conduct would significantly improve in the near future. Further, the trial court found that termination of each parent's parental rights was in the best interest of the children. As such, the trial court terminated the mother and father's parental rights and certified the children for adoption. We reverse.

## FACTS AND PROCEDURAL HISTORY:

The Department of Children and Family Services (DCFS) became involved with a cohabiting family composed of mother, D.A., father, R.M., and two children, P.M. and H.M., following an incident where R.M. whipped P.M. with a belt. The DCFS created a safety plan and D.A. attended domestic violence counseling. The safety plan provided that R.M. was permitted only supervised visits with the children.

Thereafter, R.M. and D.A. apparently reconciled and R.M. requested that a new safety plan be enacted. The following day, the DCFS received an anonymous call that R.M. was with D.A. and the children at the house of D.A.'s sister. Upon arriving, the workers observed the four family members sleeping on an air mattress on the living room floor. The children were removed from the home and placed in the State's custody on December 8, 2008.

A petition was filed on December 12, 2008, to adjudicate the children as in need of care. On January 5, 2009, the parties agreed that the children be adjudicated as such. A case plan wherein, *inter alia*, D.A. and R.M. would obtain

steady housing and employment, seek mental health treatment, and attend parenting classes was established.

On August 20, 2010, a petition for termination of parental rights and certification for adoption was filed. A trial was held on May 6, 2011, wherein judgment was reached by the trial court that terminated the parental rights of D.A. and R.M. and certified the children for adoption. D.A. and R.M. have timely appealed.

**ASSIGNMENTS OF ERROR D.A. AND R.M.:**

1.   The trial court erred in terminating the parental rights of D.A. and R.M. via concluding that her failure to more timely seek mental health treatment was sufficient to prove by clear and convincing evidence that she has not substantially complied with their case plan and that there was no reasonable expectation for further improvement in their condition or conduct in the near future nor reasonable expectation that they would complete the case plan as deemed necessary for the safe return of the children.

2.   The trial court erred in finding that termination was in the best interest of the children.

**ASSIGNMENT OF ERROR NUMBER ONE:**

D.A. contends in her first assignment of error that the trial court erred in terminating her parental rights. We find merit in this contention.

The trial court's factual findings regarding involuntary termination of parental rights are reviewed under the manifest error/clearly wrong standard. *State ex rel. H.M.D.*, 09-508 (La.App. 3 Cir. 4/7/10), 35 So.3d 426.

> In any case to involuntarily terminate parental rights, there are two private interests involved: those of the parents and those of the child. The parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children warranting great deference and vigilant protection under the

2

law, *Lassiter v. Department of Soc. Servs.*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), and due process requires that a fundamentally fair procedure be followed when the state seeks to terminate the parent-child legal relationship, *State in Interest of Delcuze*, 407 So.2d 707 (La.1981). However, the child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care. *Lehman v. Lycoming County Children's Serv.'s Agency*, 458 U.S. 502, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982); *see also State in the Interest of S.M.*, 98–0922 (La.10/20/98), 719 So.2d 445, 452. In balancing these interests, the courts of this state have consistently found the interest of the child to be paramount over that of the parent. *See, e.g., State in the Interest of S.M.*, 719 So.2d at 452 ; *State in the Interest of A.E.*, 448 So.2d 183, 186 (La.App. 4 Cir.1984); *State in the Interest of Driscoll*, 410 So.2d 255, 258 (La.App. 4 Cir.1982).

The State's *parens patriae* power allows intervention in the parent-child relationship only under serious circumstances, such as where the State seeks the permanent severance of that relationship in an involuntary termination proceeding. The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. LA. CHILD. CODE[] art. 1001. As such, the primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven. Nonetheless, courts must proceed with care and caution as the permanent termination of the legal relationship existing between natural parents and the child is one of the most drastic actions the State can take against its citizens. The potential loss to the parent is grievous, perhaps more so than the loss of personal freedom caused by incarceration. *State in the Interest of A.E.*, 448 So.2d at 185.

*State in the Interest of J.A.*, 99-2905, pp. 7-9 (La. 1/12/00), 752 So.2d 806, 810-11.

The trial court terminated D.A.'s parental rights under La.Ch.Code art. 1015(5), which states:

Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return

3

of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

In this case, there is no dispute that the children have been removed from D.A.'s custody via court order for at least a year. The dispute is whether the State carried its burden to prove, by clear and convincing evidence, that D.A. has not had some substantial compliance with her case plan and that one cannot reasonably expect D.A. to show significant improvement in her conduct or condition presently.

D.A.'s case plan was dated December 31, 2008. It required of her the following: establish and maintain housing; obtain employment; attend parenting classes; pay twenty dollars monthly of parental contributions to social services; undergo psychological evaluation and obtain an assessment with Crowley Mental Health and follow-through with any recommendations they make; complete substance abuse treatment; attend counseling at Faith House for battered women; and participate in home visits and visitation with the children.

In a report dated April 29, 2009, it was noted that D.A. did not establish housing or obtain employment. However, D.A. had applied for work at two different businesses. Further, D.A. attended five of six sessions in parenting classes, three of which D.A. participated extensively. Additionally, D.A. applied for and was placed on a waiting list to attend another parenting class to improve her mothering skills. D.A. also has attended several sessions at Faith House for battered women and substance abuse treatment wherein she was administered several urine drug screens. D.A.'s results were negative on all administered screens.

As of the April 2009 report, D.A. failed to contribute the twenty dollars monthly. However, according to the report, she brought snacks for the visits with

the children as well as presents for holidays and birthdays. Further, D.A. attended all visits during the supervision period, demonstrated attempts to utilize alternative discipline methods when the children misbehaved, showed appropriate affection for the children, and read books and colored with the children. Finally, D.A. assisted in changing H.M's diapers and helping P.M. in using the restroom.

On May 11, 2009, the trial court issued a judgment that reunification was not possible at that time, but that reunification was still the goal. On November 23, 2009, a second report noted that D.A. still failed to establish housing or obtain employment. However, the report noted that D.A. had placed applications at multiple businesses to no avail.

D.A. was involved with a mentoring program from May 2009 to November 2009. The goals of that program were to assist D.A. with finding a job and housing and discussion of anger management and parenting issues. D.A. was reportedly cooperative with this program.

D.A. attended a psychological evaluation with Dr. Bergeron on June 11, 2009, wherein she admitted to depression due to separation from her children. Dr. Bergeron recommended mental health services. Due to D.A.'s housing location, she was only able to attend one appointment at Crowley Mental Health, as her location disqualified her for their services. She was then referred to Lake Charles Mental Health. D.A. contacted Lake Charles Mental Health about services, but was told she did not meet its criteria for services.

As of the November 2009 report, D.A. has failed to contribute the twenty dollars monthly. However, according to the report, she brought snacks for the visits with the children as well as presents for the holidays and birthdays. Further, D.A. attended all visits during the supervision period, demonstrated attempts to utilize alternative discipline methods when the children misbehave, showed

appropriate affection for the children and assisted the children by changing H.M.'s diapers and helping P.M. in using the restroom. It was noted that D.A. struggled to discipline P.M. However, most parties have reported that P.M. has been difficult to discipline, including P.M.'s foster parents and therapist. Since, P.M. has been diagnosed with ADHD and been reacting favorably to the prescribed medication.

On December 7, 2009, the trial court issued a judgment that reunification was not possible at that time, but that reunification was still the goal. In March of 2010, D.A. completed an anger management course. On June 1, 2010, another report was issued. Its contents were identical to the November 2009 report. On June 1, 2010, the trial court issued a judgment that reunification was not possible at that time, but that adoption was now the goal.

On August 20, 2010, a petition was filed to terminate D.A.'s parental rights. On April 19, 2011, a report was issued on this matter. In that report, it noted that D.A. had obtained housing with the children's father, R.M. Although D.A. had attempted to get a job previously, she no longer intended to do so due to reunification with the children's father who had a steady income.

After a thorough review of the record, we find that the trial court erroneously terminated D.A.'s parental rights. She has substantially complied with her case plan for services. The areas in which she lacked were due to economic difficulties that hindered her attempt to obtain appropriate housing. Because she lacked a consistent housing location, she has failed to fully complete the mental health treatment portion of her case plan due to failing to meet the criteria for the services. The record indicates that she has reunited with the children's father who has a steady income. This steady income has helped D.A. obtain housing. This fact leads one to reasonably expect D.A. to show significant improvement in her conduct or condition and should help D.A. completely comply with her case plan.

6

Accordingly, we reverse the trial court's judgment terminating D.A.'s parental rights.

**D.A. ASSIGNMENT OF ERROR NUMBER TWO:**

In her second assignment of error, D.A. asserts that the trial court erred in finding that termination was in the best interest of the children. This assignment of error is pretermitted.

Prior to termination of parental rights, the grounds for termination must be established, and, thereafter, the trial court may terminate parental rights if termination is in the best interest of the child. La.Ch.Code art. 1037(B). We reversed the trial court's judgment terminating D.A.'s parental rights in her assignment of error number one because the State failed to establish the grounds necessary to terminate D.A.'s parental rights under La.Ch.Code art. 1015(5). Therefore, any discussion of this issue is extraneous.

**R.M. ASSIGNMENT OF ERROR NUMBER ONE:**

R.M. contends in his first assignment of error that the trial court erred in terminating his parental rights. We find merit in this contention.

Again, in this case, there is no dispute that the children have been removed from R.M.'s custody via court order for at least a year. The dispute is whether the State carried its burden to prove, by clear and convincing evidence, that he has not had some substantial compliance with his case plan and that one cannot reasonably expect R.M. to show significant improvement in his conduct or condition in the near future.

R.M.'s case plan and compliance mirrors that of D.A. His case plan included the following: stable, independent housing; obtaining and maintaining income; meeting with a case worker three times a month; obtaining mental health treatment; attending a psychological evaluation; working with mentoring mom

program budgeting; applying for housing assistance/vocational assistance; paying a parental contribution; and visiting with his children.

During the time the children were placed in the State's custody, R.M. worked odd jobs with a neighbor and applied for jobs with local businesses and oilfield employers. Since, he completed five of six sessions of parenting classes and has been steadily employed. He has improved his living situation to where he and D.A. are living in a home together that is appropriate for the children. Both D.A. and R.M. reported no domestic altercations since the children were placed in the State's custody. R.M testified that he completed anger management classes and parenting classes.

Finally, the primary concern with R.M.'s parenting skills to help him gain control of his anger in correcting his children. His testimony at the hearing was that he understood alternative methods of discipline and intended to use those rather than physical methods.

After a thorough review of the record, we find that the trial court erroneously terminated R.M.'s parental rights. He has substantially complied with his case plan for services. Much like D.A., the lack of a consistent location for housing has been the source of his failure to complete the mental health aspect of his case plan. The record indicates that he now has a more stable housing situation and also has a stable income. This fact leads one to reasonably expect R.M. to comply fully with his case plan. Accordingly, we reverse the trial court's judgment terminating his parental rights.

## R.M. ASSIGNMENT OF ERROR NUMBER TWO:

R.M.'s second assignment of error is the trial court erred in finding that termination was in the best interest of the children. This assignment of error is pretermitted for the reasons stated in D.A.'s assignment of error number one.

## CONCLUSION:

D.A. and R.M. each raise two assignments of error. Both assert that the trial court erroneously terminated their parental rights. We find merit to these assignments. These findings pretermit the remaining assignments of error. There are no court costs to assess in this matter.

**REVERSED.**