# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 24-46


## STATE IN THE INTEREST OF

## B. H.



\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. J-2022-034
HONORABLE ERROL DAVID DESHOTELS, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

## D. KENT SAVOIE
## JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of Elizabeth A. Pickett, D. Kent Savoie, and Jonathan W. Perry, Judges.

**PICKETT, C.J., concurs and assigns reasons.**

**REVERSED AND REMANDED.**

**Chad B. Guidry**
**P. O. Box 447**
**831 Fourth Ave.**
**Kinder, LA 70648**
**(337) 738-2280**
**COUNSEL FOR APPELLANT:**
**N. H.**

**Heath J. Dorsey**
**State of Louisiana**
**Department of Children and Family Services**
**1919 Kirkman St.**
**P.O. Box 1487**
**Lake Charles, LA 70601**
**(337) 491-2545**
**COUNSEL FOR APPELLEE:**
**State of Louisiana, Department of Children and Family Services**

**James David Miguez**
**Acadiana Legal Services**
**P. O. Box 2148**
**Lake Charles, LA 70602**
**(337) 439-0377**
**COUNSEL FOR OTHER APPELLEE:**
**B. H.**

**Charlie J. Draughter**
**Attorney at Law**
**4310 Ryan Street Ste 123**
**Lake Charles, La 70605**
**(504) 495-7788**
**COUNSEL FOR OTHER APPELLEE:**
**A. W.**

**SAVOIE, Judge.**

N.H. appeals a judgment terminating his parental rights to his minor child, B.H., and certifying the child eligible for adoption. For the following reasons, we reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

B.H. (sometimes referred to herein as "the child") was born May 8, 2022. N.H. is the child's biological father, and A.W. is the child's biological mother. On May 17, 2022, B.H. was placed in the custody of the State of Louisiana, through the Department of Children and Family Services ("the State") pursuant to an oral instanter order after the State received reports indicating that the child was born drug-affected and that there were concerns of neglect. B.H. was placed with his maternal grandmother and has continued to reside with her throughout these proceedings.

A continued custody hearing was held on May 19, 2022. Both N.H. and his counsel appeared at the hearing. An investigator for the State testified that the State became involved in this matter after receiving a report on May 10, 2022, indicating that B.H.'s mother had a positive drug test at the time of B.H.'s birth, and B.H.'s test results were pending. On May 12, 2022, B.H. was released from the hospital because he did not have any withdrawal symptoms. On May 16, 2022, the test results of B.H.'s meconium came back positive for amphetamines.

The State's investigator also testified that she spoke with N.H. and B.H.'s mother at their residence on May 17, 2022. She indicated that both parents admitted they had used methamphetamine the night before, while B.H. was in their care. She also testified that N.H. indicated he was bipolar but could deal with his issues himself, that he was not physically aggressive, but that he could be verbally

aggressive. She also indicated that N.H. had a criminal history, he had pending charges, and he had a "thing" scheduled for "next month."

The State's investigator also stated that an in-home safety plan was not feasible at the time because both parents admitted to substance abuse while providing care for their newborn and both had a positive drug test on site. Therefore, removal of B.H. from the home was necessary. B.H. was placed with B.H.'s maternal grandmother, who also had custody of two of the mother's additional children.

The trial court ultimately found that there was sufficient evidence to keep B.H. in the State's care, and an order was signed May 19, 2022, confirming the prior oral instanter order and continuing provisional custody of B.H. with the State.

On June 16, 2022, the State filed a Petition seeking to adjudicate the child in need of care, and an adjudication hearing was scheduled for July 26, 2022. The minutes reflect that on July 26, 2022, N.H.'s counsel informed the trial court that N.H. was incarcerated, but he was not waiving his appearance.[1] Because N.H. was not present, the hearing was continued to the following day.

On July 27, 2022, N.H.'s counsel appeared in person for the hearing, and N.H. appeared via zoom. N.H. stipulated that B.H. was in need of care, but he did not otherwise admit any of the allegations in the Petition. The trial court signed an Order on July 27, 2022, adjudicating B.H. in need of care.

---

[1] There is evidence in the record reflecting that on June 27, 2022, N.H. entered a plea of no contest to a charge of simple burglary and was sentenced to 10 years with the Department of Corrections, with 4 years suspended, and, upon release, three years of supervised probation with ordinary and special conditions. On that same date, N.H. also entered a plea of no contest to a charge of possession of a schedule IV controlled dangerous substance and was sentenced to "5 years with the Department of Corrections to run consecutive to the time given in [connection with the charge of simple burglary], suspended; upon release, 3 years of supervised probation to run concurrent with probation given in [connection with the charge of simple burglary]."

A review hearing was held November 3, 2022. N.H.'s counsel indicated that N.H. was in the custody of the Louisiana Department of Corrections and incarcerated, but he had no objection to N.H. not being present at the hearing. Counsel further stipulated to the State's recommendation that custody of B.H. remain with the State, with the primary goal of reunification. The trial court stated on the record that it accepted the State's recommendation, and it instructed the State to file its report into the record.

A report by the State, dated November 2, 2022, was filed into the record on November 3, 2022, as ordered. The ten-page report is addressed to the court and states, "This letter is to provide the court with information for the upcoming hearing. . . . The most recent Family Team Meeting (FTM) was held on 6/15/22[,] and the case plan is attached for your review." The report indicates that only the attorney appointed to represent B.H. was present at the FTM. While the report also suggests that N.H. had not worked on any part of his case plan, there is no case plan attached to the report, or otherwise in the record before us on appeal.

The November 2, 2022, report also indicated that N.H. was previously residing with his uncle, but that on June 16, 2022, he "was arrested by the Allen Parish Sheriffs [sic] for three counts of resisting the officer, refusal to give name, disturbing the peace/language, theft, and entry on or remaining after being forbidden[,]" and he was transported to Catahoula Correctional Center with an unknown release date.

Also, according to the report, N.H. had one visit with B.H. prior to incarceration, and it went well. The report also noted that N.H. was not working when B.H. came into care, he and B.H.'s mother were "assessed for parental contribution[,] and they do not have to pay anything."

3

Another review hearing was held January 3, 2023. Counsel for N.H. waived N.H.'s appearance, indicated that N.H. was still incarcerated, and stated that he was unsure of his release date. Counsel did not object to the State's recommendation for B.H. to remain in the State's custody with the goal of reunification, and the trial court orally accepted the State's recommendation on the record. The trial court also instructed the State to file its report into the record.

A duplicate copy of the State's report dated November 2, 2022, was filed into the record on January 3, 2022.

An initial permanency hearing was held May 2, 2023. Counsel for the State indicated that B.H. was still placed with his maternal grandmother and asked that custody remain with the State with the primary goal of adoption and secondary goal of reunification. Counsel for N.H. waived N.H.'s appearance but asked that N.H. be transferred for a future adjudication hearing. Counsel stated that he believed N.H. was currently serving a sentence for non-violent charges, and he believed N.H. was at a halfway house. The trial court orally accepted the State's recommendations and instructed the State to file its report into the record. A Permanency Hearing Order was signed by the court on May 26, 2023.

A report from the State dated April 17, 2023, was filed into the record on April 24, 2023, prior to the May 2, 2023 hearing. It states that the most recent FTM "was held on 11/18/23 [sic[2]]" and indicates that only B.H.'s attorney attended. The report also suggests that N.H. had been incarcerated since June 16, 2022, and that he had not worked on any part of his case plan. While the report suggests that the case plan was attached for the court's review, there was no case plan attached to the report, or otherwise filed in the record.

---

[2] We assume the correct date is November 18, 2022.

4

On October 10, 2023, the State filed a Petition for Termination of Parental Rights and Certification of Minor Children for Adoption. The petition alleged that N.H. was in the custody of the Louisiana Department of Corrections and assigned to the work release center in Alexandria, Louisiana. It further alleged that N.H. failed or refused to substantially comply with his case plan and failed to provide significant contributions to the care and support of B.H. while B.H. has been in the State's custody.

A termination hearing was held November 2, 2023. N.H. was present, along with his counsel. The State called a caseworker who was assigned to this matter to testify. The caseworker's testimony as to how B.H. came into State custody was in conformity with prior testimony and reports in the record. The caseworker further testified that N.H. had not been able to complete any portions of his case plan because he has been incarcerated since June 16, 2022. She also stated that N.H. had not visited the child during the time he was incarcerated, and he only visited with the child once before incarceration.

The caseworker also testified that B.H., who was approximately eighteen months old at the time of the hearing, had been placed with his maternal grandmother since coming into the State's custody and her home is a certified adoptive home. She also noted that two of B.H.'s half-siblings also reside with his maternal grandmother and that the grandmother adopted one of the half-siblings and has custody of the other. Also, according to the caseworker, B.H.'s paternal grandmother visits with the child. She further indicated that termination of B.H.'s biological parents' parental rights was in the best interest of the child and necessary for permanency.

On cross examination by N.H.'s counsel, the caseworker testified she had never met with N.H. She also confirmed that the State first became aware of N.H.'s incarceration on June 16, 2022.

A report from the State dated October 10, 2023, was also filed into the record on November 2, 2023. It indicates that N.H. was transferred to the Rapides Transitional Work Program on September 9, 2023, and his release date was unknown. It further reflects that N.H. had not worked on any part of his case plan and that a case plan was attached for the trial court's review; however, no case plan was attached or otherwise filed into the record. The report further states that N.H. was not ordered to pay a parental contribution.

After considering the evidence and arguments of counsel, and particularly counsel's argument concerning the applicability of La.Ch.Code art. 1036.2 to the instant matter, the trial court ultimately found that termination of parental rights was appropriate. On November 14, 2023, the trial court signed a judgment terminating N.H.'s parental rights "pursuant to Children's code Articles 1001 *et. Seq.*, and more particularly Articles 1015(4)(b), (failure to provide substantial support to the child), 1015(5), (failure to complete case plan), and 1036." The judgment also terminated the biological mother's parental rights as to B.H., ordered that custody of B.H. remain with the State, and stated that B.H. was eligible for adoption. Only N.H. has appealed.

## ASSIGNMENTS OF ERROR

N.H. asserts the following as assignments of error:

Assignment of Error #1: Appellant contends the trial court manifestly erred in finding grounds for termination of his parental rights, pursuant to *La. Children's Code Art. 1015(4)(b)*, (his failure to provide substantial support to the child for a period in excess of six months).

6

Assignment of Error #2: Appellant contends the trial court manifestly erred in finding grounds for termination of his parental rights, pursuant to *La. Children's Code Art. 1015(5) & 1036* (his failure to substantially complete his case plan).

Assignment of Error #3: Appellant contends the trial court manifestly erred because the state should be barred from terminating [N.H.]'s parental rights during his term of incarceration because [of the State's] failure to comply with the express language of *La. Ch.Code art. 1036.2.*

## ANALYSIS

As stated by the Louisiana Supreme Court in *State ex rel. J.A.*, 99-2905, pp. 7–9 (La. 1/12/00), 752 So.2d 806, 810–11:

In any case to involuntarily terminate parental rights, there are two private interests involved: those of the parents and those of the child. The parents have a natural, fundamental liberty interest to the continuing companionship, care, custody and management of their children warranting great deference and vigilant protection under the law, *Lassiter v. Department of Soc. Servs.*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), and due process requires that a fundamentally fair procedure be followed when the state seeks to terminate the parent-child legal relationship, *State in Interest of Delcuze*, 407 So.2d 707 (La.1981). However, the child has a profound interest, often at odds with those of his parents, in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long-term, and continuous relationships found in a home with proper parental care. *Lehman v. Lycoming County Children's Serv.'s Agency*, 458 U.S. 502, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982); *see also State in the Interest of S.M.*, 98-0922 (La.10/20/98), 719 So.2d 445, 452. In balancing these interests, the courts of this state have consistently found the interest of the child to be paramount over that of the parent. *See, e.g., State in the Interest of S.M.*, 719 So.2d at 452; *State in the Interest of A.E.*, 448 So.2d 183, 186 (La.App. 4 Cir.1984); *State in the Interest of Driscoll*, 410 So.2d 255, 258 (La.App. 4 Cir.1982).

The State's *parens patriae* power allows intervention in the parent-child relationship only under serious circumstances, such as where the State seeks the permanent severance of that relationship in an involuntary termination proceeding. The fundamental purpose of involuntary termination proceedings is to provide the greatest possible protection to a child whose parents are unwilling or unable to provide adequate care for his physical, emotional, and mental health needs and adequate rearing by providing an expeditious judicial process for the termination of all parental rights and responsibilities and to achieve

permanency and stability for the child. The focus of an involuntary termination proceeding is not whether the parent should be deprived of custody, but whether it would be in the best interest of the child for all legal relations with the parents to be terminated. LA. CHILD. CODE[] art. 1001. As such, the primary concern of the courts and the State remains to secure the best interest for the child, including termination of parental rights if justifiable grounds exist and are proven. Nonetheless, courts must proceed with care and caution as the permanent termination of the legal relationship existing between natural parents and the child is one of the most drastic actions the State can take against its citizens. The potential loss to the parent is grievous, perhaps more so than the loss of personal freedom caused by incarceration. *State in the Interest of A.E.*, 448 So.2d at 185.

Louisiana Children's Code Article 1015 sets forth eight grounds upon which parental rights may be terminated, including the following, which are at issue in this case:

> (4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
>
> . . . .
>
> (b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
>
> . . . .
>
> (5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

As noted by the Louisiana Supreme Court in *State ex rel. A.T.*, 06-501, p. 5 (La. 7/6/06), 936 So.2d 79, 82–83:

> In order to terminate parental rights, the court must find that the State has established at least one of the statutory grounds by clear and

convincing evidence. *State ex rel. J.A.*, 99-2905 (La. 1/12/00), 752 So.2d 806, 811 (citing La. Ch. C. Art. 1035(A); *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Further, even upon finding that the State has met its evidentiary burden, a court still must not terminate parental rights unless it determines that to do so is in the child's best interests. La. Ch. C. Art. 1039; *State ex rel. G.J.L.*, 00-3278 (La. 6/29/01), 791 So.2d 80, 85.

"It is well-settled that an appellate court cannot set aside a juvenile court's findings of fact in the absence of manifest error or unless those findings are clearly wrong." *State ex rel. S.M.W.*, [00-3277, p. 14 (La. 2/21/01, 781 So.2d 1223,] 1233 (citing *In re A.J.F.*, 00-0948 (La. 6/30/00), 764 So.2d 47, 61)

On appeal, N.H.'s arguments focus on his position that the State was precluded from seeking and obtaining termination of his parental rights under La.Ch.Code arts. 1015(4)(b) and/or 1015(5) because the State failed to comply with La.Ch.Code art. 1036.2.[3] However, after examining the record, we find that

---

[3] Louisiana Children's Code Article 1036.2 states in pertinent part as follows:

A. An incarcerated parent of a child in the custody of the department shall provide a reasonable plan for the appropriate care of his child other than foster care. Failure by the incarcerated parent to provide an appropriate plan may result in an action to terminate his parental rights.

B. Within thirty days of notification that a parent of a child in foster care is incarcerated in this state, a representative of the department shall visit the incarcerated parent and give written notification to the incarcerated parent of his duty to provide a reasonable plan for the appropriate care of the child. The department, at that time, shall obtain information regarding the plan, including the names, addresses, cellular numbers, telephone numbers, and other contact information of every potential suitable alternative caregiver.

C. The incarcerated parent shall provide the department with the required information in writing within sixty days of receipt of the notification form. During that period, a parent may submit additional information or names of other caregivers using the form attached to the notice. The department shall provide the parent with a stamped, self-addressed envelope for this purpose. No additional caregiver names will be accepted after the expiration of the sixty-day period, as evidenced by a postmark.

D. The department shall conduct an assessment of the persons named as caregivers by the incarcerated parent and shall notify the parent within ten days of completion of the assessment whether the persons named are willing and able to offer a wholesome and stable environment for the child.

In addition, La.Ch.Code art. 1036.2(E) provides that "[t]he notification form given to the incarcerated parent shall be substantially follows:" and then provides an exemplar form.

the evidence contained therein is wholly insufficient to support the termination of N.H.'s parental rights under either La.Ch.Code art. 1015(4)(b) or 1015(5), and we are compelled to reverse the trial court on that basis, given that termination of parental rights is a drastic and grievous action. See La.Code Civ.P. art. 2164.

The trial court found that termination of N.H.'s parental rights was proper under La.Ch.Code art. 1015(4)(b), which contemplates the termination of parental rights on abandonment grounds if the State shows by clear and convincing evidence that "the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months."

At the November 2, 2023 termination hearing, the State caseworker was the only witness who was called to testify. There was no testimony elicited from her regarding the issue of support, other than her indication that N.H. failed to satisfy a component of his case plan that required him to have a stable income. However, as noted above, there is no case plan in the record before us on appeal, and the caseworker testified that she never met with N.H. Further, while the State's various status reports were filed into the record, each of those reports specifically reflect that N.H. was assessed for a parental contribution, but he "do[es] not have to pay anything." Therefore, termination of N.H.'s parental rights for failing to pay support for over six months was not appropriate when, according to the State, N.H. was not ordered to pay child support while B.H. has been in the State's custody since he was one-week old. The record does not support termination of parental rights under La.Ch.Code art. 1015(4)(b).

In addition, the trial court found that termination of N.H.'s parental rights was proper under La.Ch.Code art. 1015(5) for failing to comply with his case plan. Louisiana Children's Code Article 1015(5) contemplates termination of parental

rights when, *inter alia*, "there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child[.]"

The procedure for developing and implementing a case plan is set forth in La.Ch.Code arts. 673–677. Specifically, La.Ch.Code art. 673 requires a case plan to be developed within sixty days after the child enters the State's custody, and La.Ch.Code art. 675 sets forth the purpose and requisite contents of a case plan. In addition, La.Ch.Code art. 674(A) states:

> A copy of the case plan shall be filed with the court ten days before any scheduled disposition, permanency, or case review hearing. Upon filing, the department shall provide a copy of the case plan to counsel of record either by mail or electronic mail and shall mail a copy by certified mail to any unrepresented parent at his last known address or send the copy by electronic mail at the electronic mail address expressly designated by the parent in a pleading, at the continued custody or continued safety plan hearing, or at any other hearing at which the parent personally appeared before the court, unless otherwise ordered by the court for good cause.

Further, La.Ch.Code art. 677 states as follows regarding the trial court's review of a case plan:

> A. At the disposition hearing, the court shall consider the content or implementation of the case plan and any response filed concerning it. At any other hearing held subsequent to the filing of the case plan, on its own motion or upon motion of any party for good cause shown, the court may consider the content or implementation of the case plan or of any response filed concerning it.
>
> B. If no party files a written response objecting to the case plan and the court finds that the plan protects the health, welfare, and safety of the child and is in the best interest of the child, the court shall render an order approving the plan.
>
> C. If the court does not approve the case plan, the court shall enter specific written reasons for finding that the plan does not protect the health, welfare, and safety of the child or is otherwise not in the best interest of the child.

11

As stated by this court in *State in Interest of P.A.R.*, 06-423, p. 4 (La.App. 3 Cir. 10/18/06), 942 So.2d 57, 59,

> The Louisiana Children's Code set[s] forth the procedures required for removing children in need of care from the custody of their parents and the procedures that must be followed to reunify the children with their parents or terminate their parental rights. "Because due process requires that a fundamentally fair procedure be followed when the State seeks to terminate the parent-child legal relationship, actions to terminate must be scrutinized very carefully." [*State ex rel. G.J.L.,* 00-3278, p. 7 (La. 6/29/01), 791 So.2d 80,] 85.

When the record lacks a case plan that has been properly approved by the trial court, "the termination petition must fail[, because] [t]he 'fundamentally fair procedure' required by our supreme court and outlined in the Children's Code has clearly not been followed." *State in Interest of P.A.R.*, 942 So.2d at 61.

In the instant case, the record before us on appeal is completely devoid of any case plan created or filed by the State. The record further lacks any indication that the trial court considered and/or approved any case plan in this case as required by La.Ch.Code art. 677. Because the procedure outlined by the Louisiana Children's Code with respect to filing and obtaining court approval of a case plan was not followed, termination of N.H.'s parental rights under La.Ch.Code art. 1015(5) for failing to comply with a case plan was improper. Therefore, the trial court's judgment must be reversed to the extent that it terminated N.H.'s parental rights and certified B.H. eligible for adoption.

## **<u>DECREE</u>**

For the reasons stated above, the trial court's judgment rendered November 14, 2023, is hereby reversed to the extent that it terminated N.H.'s parental rights as to B.H. and certified B.H. eligible for adoption, and the case is remanded for proceedings consistent with this opinion.

12

**REVERSED AND REMANDED.**

**STATE IN THE INTEREST OF B.H.**

**PICKETT, C.J., concurs and assigns reasons.**

I agree with the majority opinion that the record in this case, for all the reasons set forth by the majority, does not support termination of N.H.'s parental rights.  I write separately to highlight that the mandatory language of La.Ch.Code art. 1036.2 was not followed by the state in this case.  The record is clear that the state knew N.H. was incarcerated on May 16, 2022, the day the state filed the petition to adjudicate B.H. a child in need of care.  "Within thirty days of notification that a parent of a child in foster care is incarcerated in this state, a representative of the department **shall** visit the incarcerated parent and give written notification to the incarcerated parent of his duty to provide a reasonable plan for the appropriate care of the child."  La.Ch.Code art. 1036.2(B) (Emphasis added).

Because the language of Article 1036.2 is mandatory and in no way discretionary, the failure of OCS to comply with this mandate would be fatal to this termination proceeding even if it did not fail for the reasons stated by the majority.