448 So.2d 183 (1984)
STATE In the Interest of A.E. and J.D.
No. CA 1295.
Court of Appeal of Louisiana, Fourth Circuit.
March 14, 1984.
*184 Richard Ducote, Dept. of Health & Human Resources, Sp. Asst. Dist. Atty., Orleans Parish, New Orleans, for State of La., plaintiff-appellant.
Mark McTernan, McTernan, Parr & Rumage, New Orleans, for Ernestine Yava, defendant-appellee.
Before WARD, BYRNES and AUGUSTINE, JJ.
WARD, Judge.
In this appeal we are called upon to decide whether due process prohibits the State of Louisiana from proceeding with its action to terminate the parental rights of a comatose mother who is unable either to appear in court to defend herself or to communicate with her appointed counsel to prepare her defense. We conclude it does not, and we reverse the ruling of the Juvenile Court which quashed the State's petition to terminate parental rights.
The State's petition is the culmination of a series of state actions. In 1971, the State charged the mother, Ernestine Yava, with abuse of her minor son, A.E., a two year old. When the case was tried, the State introduced witnesses who testified that Ms. Yava attempted to drown her son in a public fountain. A.E.'s alleged father had long since disappeared, and after hearing the evidence, the Juvenile Court Judge placed A.E. in a foster home where he has remained ever since. His foster parents now wish to adopt him, and A.E., now 14 years old, fervently hopes to be adopted by them.
In 1981, the State again charged Ms. Yava, this time for the neglect of her second illegitimate child, R.D., a daughter, then six months old. When that case was tried, the State showed that a social worker had found R.D. living in a feces-ridden apartment, dirty, shabbily clothed, and neglected. R.D.'s alleged father, like A.E.'s, had long since disappeared. The Juvenile Court Judge ordered R.D. placed with foster parents, although not the same as A.E.'s, and they too want to adopt her. She is now two years of age.
Ms. Yava has a lengthy medical history which indicates she is severely mentally ill, has delusions, and is out of contact with reality. Recently, she has become physically ill as well. While walking in the street, she collapsed and was taken to a hospital where physicians found organic brain damage, hemorrhaging of blood vessels in the brain. She is now comatose, unable to care for herself or even to communicate, and is confined in a hospital where she is fed intraveneously. While treating physicians do not consider her "brain dead", they have no hope for her recovery.
Because Mrs. Yava is unable to communicate and because of her past conduct, we are unable to say with any certainty that we are presented with a direct conflict between the interest of a mother who wants to retain her parental rights and those of the State and her children who want to terminate those rights. Nonetheless, her appointed counsel has presumed, as he should, that Ms. Yava wants to keep her children and he has vigorously asserted her presumed interest in retaining her parental rights. He argues that due process demands suspension of proceedings until Ms. Yava regains competency and is able to personally appear in Court to defend her interest, if she desires. Consequently, we must decide if due process requires the State to defer to a mother's interest to be present in Court and to be given an opportunity to present a meaningful defense through communication with her appointed counsel.
Louisiana statutory law does not require suspension of proceedings to terminate parental rights when a parent is either *185 mentally incompetent or physically ill and unable to appear in court in the foreseeable future. Of course the Juvenile Court Judge has limited discretion to continue the proceedings, but the question is whether due process requires indefinite suspension of the action.
If competent, Ms. Yava could appear in Court to defend herself to the best of her ability without counsel. But because she is incompetent, Ms. Yava can neither undertake her defense by appearing in Court nor assist counsel in her defense. Consequently, the issue is broader and more comprehensive than the Constitutional question of the right to effective assistance of counsel.
After considering the requirements of procedural due process, we conclude the State has the right to proceed in its efforts to terminate parental rights, which would permit the foster parents of A.E. and R.D. to adopt them.
The concept of procedural due process, broadly defined as one of "fundamental fairness," requires that minimal procedural safeguards must be established before the state may deprive a person of fundamental rights of life, liberty, or property. Whether the procedural safeguards established measure up to due process depends on the nature of the proceeding and the nature of the right or interest affected. Cafeteria & Restaurant Workers Union, Local 473 v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). The rights of parents to the companionship, care, custody and management of their children is a fundamental liberty interest warranting great deference and vigilent protection under the law. Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Pierce v. Society of Sisters, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925); Meyer v. Nebraska, 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923). Consequently, these proceedings which would irreversibly terminate a parent's rights must comport with the highest standard of due process, Lassiter v. Department of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); State in re Delcuze, 407 So.2d 707 (La.1981).
In Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the United States Supreme Court defined due process standards which the Court has applied in parental rights termination cases. Lassiter; Santosky v. Kraemer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).
When measuring State proceedings against due process standards Mathews requires a consideration of:
First, the private interest that will be affected by the official action; Second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burden that the additional or substitute procedural requirements would entail. 424 U.S. at 334-335, 96 S.Ct. at 902-903.

The Private Interest
There are two private interests to be considered in any parental rights termination case: those of the parents and those of the children. In Lassiter, the U.S. Supreme Court declared it "clear beyond the need for multiple citation" that parental rights constitute an interest "far more precious than any property right" and that a termination of parental rights is a "unique kind of deprivation". Lassiter, 452 U.S. at 27, 101 S.Ct. at 2159. The potential loss to the parent is grievous, perhaps more so than incarceration. State in re Howard, 382 So.2d 194, 198 (La.App. 2nd Cir.1980).
On the other hand, children have a profound interest, often at odds with those of a parent, an interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long term, continuous relationships in contrast to the lingering uncertainty of foster care, Lehman v. Lycoming County Social Services, 458 U.S. 502, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982).
*186 Ms. Yava's counsel argues that due process requires protection of her interest to the same extent as those of an incompetent criminal defendant, meaning, when once found incompetent, the proceedings must stop until competency is regained. See La. C.Cr.P. art. 641. There is a great similarity because of the gravity of the interest affected, yet there is a vast difference between the two.
In criminal proceedings, there is only one private interest, those of the defendant. In these proceedings there are two, those of the mother and those of the children. In State of Louisiana in the Interest of Driscoll, 410 So.2d 255 (La.App. 4th Cir.1982), when forced to choose between the interest of a parent and the interest of a minor child, this Court found the interest of the child were paramount.
In this case we believe the interest of the children in stabilizing their identity and home life by a judicial determination are greater than Ms. Yava's interest in her day in Court by being physically present and able to communicate with her counsel.
Moreover, she will not be entirely deprived of her day in court. The State, by providing for appointment of counsel, and the Juvenile Court, by appointing counsel to represent Ms. Yava, has given her the opportunity, through her counsel, to find and present witnesses in her behalf, and to cross examine those that testify for the State acting in the interest of the minors. Although Ms. Yava cannot appear and testify, her counsel may seek and produce witnesses, including expert witnesses, to testify in her behalf, limited only by the possibility that none can be found who will testify favorably. And in this case, nothing impedes counsel from cross-examination of anticipated expert witnesses for the State, psychiatrists, other medical doctors, and social workers, to test their opinions.
There is nothing shocking in the procedure we approve. It does not violate concepts of fundamental fairness. In fact, the ABA Code of Professional Responsibility recognizes that an attorney may be charged with representing an incompetent client who can neither appear in Court nor communicate with counsel.
Any mental or physical condition of a client that renders him incapable of making a considered judgment on his own behalf casts additional responsibilities upon his lawyer.... If a client under disability has no legal representative, his lawyer may be compelled in court proceedings to make decisions on behalf of the client.... If the disability of a client and the lack of a legal representative compel the lawyer to make decisions for his client, the lawyer should consider all circumstances then prevailing and act with care to safeguard and advance the interests of his client. EC 7-12.

The Risk of Error
Mathews, supra, requires this Court to evaluate the risk of erroneous deprivation of Ms. Yava's parental rights and to consider whether additional or substitute procedural safeguards would reduce that risk. The tolerable margin of error depends on the nature of the threatened loss, severe and lasting in this case.
Whether the loss threatened by a particular type of proceeding is sufficiently grave to warrant more than average certainty on the part of the fact finder turns on both the nature of the private interest threatened and the permanency of the threatened loss. Santosky, 455 U.S. at 758, 102 S.Ct. at 1396.
The State of Louisiana has adopted a comprehensive procedure to reduce risk of error and to afford due process. La.R.S. 13:1600, et seq. Provisions for appointment of counsel either meet or exceed United States Constitutional standards. State in re Howard, 382 So.2d 194 (La.App. 2nd Cir.1980), La.R.S. 13:1603. Lassiter, supra. In the instant case, for reasons previously discussed, we believe appointment of counsel has reduced the risk of error to a minimum. When counsel has been appointed, due process does not always require an opportunity to be present in court or the ability to communicate with counsel. As an example, judicial commitments of the *187 mentally ill, La.R.S. 28:50 et seq.; 28:54(C) and interdiction of incompetents, La.C. Civ.P. art. 4544, have been found to meet due process standards, even when physical presence is impractical or when the ability to communicate with counsel is lacking.
Presence of the respondent in a civil proceeding to prove the party incompetent is not a requirement of due process. Rud v. Dahl, 578 F.2d 674 (7th Cir.1978). The party's presence at trial is a "condition of due process to the extent that a fair and just hearing would be thwarted by his absence and to that extent only." Snyder v. Massachusetts, 291 U.S. 97, 108, 54 S.Ct. 330, 333, 78 L.Ed. 674 (1934). By providing for appointed counsel, the State has protected her rights more than required by due process.
Finally, the risk of error is reduced by requiring the State to prove by clear and convincing evidence that termination of parental rights is in the best interest of the minors. Santosky.
We have considered whether additional or substitute safeguards exist and we find none, and none has been suggested by counsel. We also have considered the alternative suggested by counselhalt these proceedings, deprive the children of the opportunity for adoption, and consign them to foster care status for an indefinite time. We reject this choice. Considering both the risk of error and the alternatives available, we believe the risk should be undertaken because there are no acceptable alternatives.

The Governmental Interest
The State has two interests: a "parens patriae" interest in the welfare of children and a fiscal interest in eliminating the costs of maintaining children in its custody. These two State interests may diverge in cases where the best interest of the child dictate nurture of the parent-child relationship through the expenditure of State funds for counseling, foster care and other services. However, where the child's best interest will be served by termination of parental rights and adoption, both State interests are promoted when the minor child is adopted and cost of State custody ended.
While the State's fiscal interest to reduce custodial costs is insignificant when compared to parental rights, State in re Driscoll, 410 So.2d 255 (La.App. 4th Cir. 1982), the State's interest in the welfare of the children is not. We believe the State's interest as parens patriae is so overwhelming that Ms. Yava's interest must give way.

Judgment
In sum, due process is a requirement of fundamental fairness. Applying due process is "an uncertain enterprise which must discover what `fundamental fairness' consists of in a particular situation by first considering any relevant precedents and then by assessing the several interests that are at stake." Lassiter, 452 U.S. at 24-25, 101 S.Ct. at 2158-2159.
We find the balance favors permitting the State to proceed with its efforts to terminate parental rights. Whether the State can prove the merits of its case for termination of parental rights by clear and convincing evidence is a decision for the Juvenile Court Judge. The Trial Court's order quashing the petition is vacated.
Reversed and remanded.