481 So.2d 191 (1985)
STATE of Louisiana in the Interest of the Minor Children S.A.D., P.M.D. and C.T.D.[1]
No. CJ 85 0703.
Court of Appeal of Louisiana, First Circuit.
December 26, 1985.
Richard J. Branzan, Jr., Atty. at Law, Baton Rouge, for Office of Human Dev.
Jackie Marve, Asst. Dist. Atty., Houma, for State of La.
Leopold B. Babin, Atty. at Law, Houma, for appellant.
Berwick Duval, Atty. at Law, Houma, for children.
Before CARTER, SAVOIE and ALFORD, JJ.
ALFORD, Judge.
This is an appeal from a judgment terminating the appellant's parental rights under LSA-R.S. 13:1601 et seq. Appellant is the mother of three minor children presently in the custody of the state through the Department of Health and Human Resources.
Appellant and her husband had their four minor children, ages three through seven, removed from their custody pursuant to valid court orders signed on August 27, 1981, and August 31, 1981, as children in need of care. At the time the children were removed from their parents custody, it was shown that the children were dirty, hungry and inappropriately dressed. Their *192 home was filthy, and the mother was incoherent and under heavy medication. Since that time, she has been hospitalized on several occasions because of severe mental illness. The parents subsequently separated. All four children remained in the custody of the state until the father obtained custody of the oldest son in a judgment signed March 16, 1984. The father voluntarily terminated his parental rights as to the other three children by signing authentic acts surrendering the children for adoption in accordance with LSA-R.S. 9:402.
A petition for termination of the mother's parental rights pursuant to LSA-R.S. 13:1601(B)(C)(D)(F) was filed by the state on January 22, 1985. An attorney was appointed to represent the appellant and another attorney was named to represent the three children's interests. The appellant's attorney filed a motion on March 19, 1985, requesting an indefinite continuance on the basis that appellant had been committed to a mental institution and was incapable of assisting counsel. The court denied the motion on March 22, 1985. The case came to trial on March 29, 1985, at which time appellant's counsel moved orally for a continuance of approximately one month because of appellant's commitment. The judge denied the motion after hearing testimony by the appellant's treating psychiatrist. We agree and affirm the trial court's action.
After trial on the merits, the judge terminated the appellant's parental rights, finding that the state had proved the allegations required by LSA-R.S. 13:1601 by clear and convincing evidence. Appellant does not contest this finding; therefore, it is not before this court. The judge also ordered that the three children be placed for adoption.
Appellant's sole contention on appeal is that the trial court's failure to grant a continuance is a violation of procedural due process under U.S. Const. amends. VI and XIV. The appellant was unable to attend the trial since she was committed to a mental hospital. Thus the appellant's counsel alleges that a continuance was necessary in order to allow the mother the chance to appear in court and to assist counsel in the preparation of her defense, since she would possibly have been released from the hospital.
Louisiana statutory law does not require suspension of proceedings to terminate parental rights when a parent is either mentally incompetent or physically ill and unable to appear in court for the foreseeable future. State in the Interest of A.E., 448 So.2d 183 (La.App. 4th Cir.1984). However, we must determine whether due process requires a suspension of the action.
The testimony of Dr. Gordon Walker, the psychiatrist treating the appellant, was taken before the court decided to deny the continuance. His uncontested testimony showed that the appellant has a lengthy medical history which indicates she is severely mentally ill, has delusions and is out of contact with reality. Dr. Walker has diagnosed her condition as chronic paranoid schizophrenia which has been complicated by the fact that appellant has refused to take required medication. During the three years preceding trial, she had been hospitalized on multiple occasions for an average of two to three months each.
Dr. Walker did indicate at the time of trial that it was likely the appellant would be released within a month or two since she would probably reach her base line. Dr. Walker explained that when the appellant reaches her base line, she is doing as well as she is going to be able to do, and she is released because of a shortage of psychiatric beds. Retention of her base line condition is dependent on her remaining on medication, which she has not done in the past. Dr. Walker indicated that appellant's prognosis for recovery to a functional level is poor.
Dr. Walker indicated that when released, upon reaching her base line, the appellant would probably not be able to assist in her own defense. He stated that the appellant could not be counted on to provide accurate information. He testified that the appellant has residual delusions and a poor concern for her own best interests that would *193 very likely interfere with her capacity to cooperate in her own defense at any time. Additionally, Dr. Walker stated that the appellant's chances of ever being able to parent her children are extremely unlikely. According to Dr. Walker, even when she is released from the hospital, she will still be unable to parent.
Our brethren in the Fourth Circuit were presented with a similar problem in State in the Interest of A.E., supra. In that case, the mother was institutionalized for both physical and mental illness. At the time of trial she was comatose, with no hope for her recovery. 448 So.2d at 184. The court determined that her due process rights were not violated by allowing her court appointed counsel to defend her in the termination proceedings. 448 So.2d at 185.
In examining the concept of procedural due process, we agree with the Fourth Circuit that due process, broadly defined as "fundamental fairness", requires that certain safeguards must be instituted before the state may deprive a person of parental rights. The rights of parents to the companionship, care, custody and management of their children is a fundamental private liberty interest warranting great deference and vigilant protection under the law. Lassiter v. Department of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981).
The United States Supreme Court has applied due process standards set out in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) to parental rights termination cases. See Lassiter, 452 U.S. at 27, 101 S.Ct. at 2159; Santosky v. Kraemer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).
To determine if a state's proceedings meet due process requirements, Mathews, 424 U.S. at 335, 96 S.Ct. at 903, requires a consideration of:
First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burden that the additional or substitute procedural requirement would entail.
In the instant case, as in any case to terminate parental rights, there are two private interests involved: those of the parents and those of the children. These two interests are often at odds in a termination case. Parental rights constitute an important interest warranting deference and protection and a termination of that interest is a "unique kind of deprivation". Lassiter, 101 S.Ct. at 2159. However, children have an interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long term, continuous relationships. Lehman v. Lycoming County Children's Services Agency, 458 U.S. 502, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982). In two recent cases, when forced to choose between the interest of a parent and the interest of the minors, the appellate court has found the interest of child to be paramount. State in the Interest of A.E., 448 So.2d at 186; State of Louisiana in the Interest of Driscoll, 410 So.2d 255 (La. App. 4th Cir.1982). We agree.
In the instant case, we believe the interest of the children in stablizing their home life is greater than the appellant's presence in court. Moreover, she was represented by competent counsel who presented a witness on her behalf and who cross-examined the state's witnesses. Additionally, expert testimony indicated that the appellant would not have been able to assist in her defense even if she was present.
As to the risk of error, the state has adopted a comprehensive procedure to reduce risk of error and afford due process. LSA-R.S. 13:1600 et seq. Provisions of LSA-R.S. 13:1602(C) for appointment of counsel either meet or exceed the constitutional standards expressed in Lassiter, 452 U.S. at 31-32, 101 S.Ct. at 2161-2162. In the instant case, for reasons discussed previously, we believe that appointment of *194 counsel has reduced the risk of error to a minimum. As the Fourth Circuit has so aptly stated in State in the Interest of A.E., 448 So.2d at 186, 187:
When counsel has been appointed, due process does not always require an opportunity to be present in court or the ability to communicate with counsel. As an example, judicial commitments of the mentally ill, La.R.S. 28:50 et seq.; 28:54(C) and interdiction of incompetents, La.C.Civ.P. art. 4544, have been found to meet due process standards, even when physical presence is impractical or when the ability to communicate with counsel is lacking.
* * * * * *
Finally, the risk of error is reduced by requiring the State to prove by clear and convincing evidence that termination of parental rights is in the best interest of the minors.
As to the government's interest, the state has a significant "parens patriae" interest in the welfare of children residing here. We believe that the state's interest as "parens patriae", when such interest parallels the strong overriding interest of the children in having parental rights terminated (and only when the interests so parallel), is paramount to the parental right to be present at the termination hearing. This is even more significant when the appellant's psychiatrist testified that it is unlikely that the mother would be capable of assisting counsel or parenting these children at any future time.
As noted previously, the father had voluntarily terminated his parental rights by consenting that the children be placed for adoption in accordance with LSA-R.S. 9:402.
For the above and foregoing reasons, we affirm the trial court's judgment terminating the appellant's parental rights and ordering the children to be placed for adoption.
AFFIRMED.
NOTES
[1] At the request of the State, this case has been recaptioned to preserve the confidentiality of this matter. The mother's name is not set out herein for the same reason.