LOBRANO, Judge.
This is an appeal from a judgment of the Juvenile Court for the Parish of Orleans, which dismissed the State’s petition to terminate the parental rights of Henry Barber as to his minor son, T.S.B. The issue before us is whether due process prohibits the State of Louisiana from proceeding with its action to terminate the parental rights of a deaf father who is unable to hear the proceedings against him and to communicate with his appointed counsel. We find that it does not and reverse the ruling of the Juvenile Court.
T.S.B. was bom on September 1, 1982. He was removed from the custody of both parents due to their incarceration. His mother, Sylvia Wilson, signed a voluntary surrender of parental rights on January 10, 1986. His father, Henry Barber, has a history of criminal behavior consisting of numerous felony convictions. On July 24, 1984, Henry Barber was confined to the custody of the Department of Corrections to serve a sentence of ten years. He is currently incarcerated.
On February 17, 1987, the State filed a petition for termination of parental rights against Henry Barber. Counsel was appointed to represent Mr. Barber.
Mr. Barber is profoundly deaf. Pre-trial hearings were held on April 30, June 30, September 9 and October 2,1987 to discuss the nature and extent of Barber’s deafness and what measures were available to the Court to aid his impairment. Following the June 30, 1987 hearing, the Court ordered that the State be allowed to proceed with the September 9th hearing as long as Barber was equipped with two hearing aids. The Court continued the hearing on September 9th to October 12,1987 and ordered that a second audiologist examine Barber and submit an affidavit to the Court stating whether Barber is able, while using the hearing aids to hear well enough to participate in the proceedings against him. On October 12, 1987, after considering the testimony of Keith Stroud, audiologist with Beltone, the trial court granted defense counsel’s request to dismiss the State’s petition. The Court found that “Mr. Barber’s deafness, coupled with his lack of formal education, preclude his being tried in this very serious proceeding within constitutional guidelines. It is not the deafness alone, but that, coupled with the fact that he has no formal education, leads me to believe that the alternatives that have been suggested by the state, which I think would be a feasible alternative with persons who had an educational background that would permit them to utilize these alternatives, I don’t think apply in Mr. Barber’s case.”
The State appeals the trial court’s judgment asserting the trial court erred in dismissing the petition to terminate parental rights because an attorney was appointed to protect Barber’s interests and other alternatives were available to aid Barber in communicating and understanding the proceedings.
Procedural due process, broadly defined as one of “fundamental fairness”, requires that minimal procedural safeguards must be established before the State may deprive a person of fundamental rights of life, liberty, or property. State In the Interest of A.E., 448 So.2d 183 (La.App. 4th Cir.1984). Whether the procedural safeguards established measure up to due process depends on the nature of the proceedings and the nature of the right or interest affected. The rights of parents to the companionship, care, custody and management of their children is a fundamental liberty interest warranting great deference and vigilant protection under the law. Consequently, proceedings which would irreversibly terminate a parent’s rights must comport with the highest standard of due process. State in the Interest of A.E., supra, citing Cafeteria and Restaurant Workers Union Local 473 v. McElroy, 367 U.S. 886, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961); Stanley v. Illinois, *868 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972); Lassiter v. Department of Social Services, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981); State In Re Delcuze, 407 So.2d 707 (La.1981).
The United States Supreme Court has applied due process standards as set out in Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) to parental rights termination cases. Mathews requires a consideration of:
“First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government’s interest, including the function involved and the fiscal and administrative burden that the additional or substitute procedural requirement would entail.” 424 U.S. at 334, 335, 96 S.Ct. at 902, 903.
As in any case to terminate parental rights, there are two private interests to be considered: those of the parent and those of the child. These interests are often at odds. Unquestionably, termination of parental rights is a “unique kind of deprivation” which warrants deference and protection. Lassiter v. Department of Social Services, supra. However, the child has an interest in terminating parental rights that prevent adoption and inhibit establishing secure, stable, long term and continuous relationships. State in the Interest of A.E., supra; Lehman v. Lycoming County Children’s Services Agency, 458 U.S. 502, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982). In balancing these. interests, this Court has consistently found the interest of the child to be paramount over that of the parent. State In the Interest of A.E., supra; State of Louisiana in the Interest of Driscoll, 410 So.2d 255 (La.App. 4th Cir.1982).
In the instant case we believe that the interest of the minor child in being available for adoption where he can enjoy a stable homelife outweighs the difficulty of Barber communicating with his appointed counsel. The record reflects that Barber was represented at all times during the proceedings by competent counsel who adequately and vigorously defended his right to a fair trial. The expert testimony of the audiologist, Keith Stroud, established that although Barber is profoundly deaf, he is able to communicate. Stroud testified that with the use of hearing aids, Barber could hear 30-40% of a conversation that was one on one (such as between himself and his appointed counsel). In addition, Barber can read and write. Stroud testified that both he and the prison guards were able to communicate with Barber via written notes and that Barber had no trouble communicating using this method. Moreover, the Court record contains numerous letters written to the Juvenile Court Judge by Barber indicating his appreciation and understanding of the proceedings against him.
Whether the loss threatened by a particular type of proceeding is sufficiently grave to warrant more than average certainty on the part of the fact finder turns on both the nature of the private interest threatened and the permanency of the threatened loss. Santosky v. Kramer, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982).
As to the risk of error, the State has adopted a comprehensive procedure to reduce risk of error and afford due process. La.R.S. 13:1600 et seq. The provisions of La.R.S. 13:1602(C) for the appointment of counsel either meet or exceed the constitutional standards expressed in Lassiter. State In the Interest of A.E., supra. When counsel has been appointed, due process does not always require an opportunity to be present in Court or the ability to communicate with counsel. State in the Interest of A.E., supra. In the instant case, the appointment of competent counsel, the limited use of hearing aids and Barber’s ability to communicate in writing has reduced the risk of error to a minimum.
Finally, the risk of error is reduced by requiring the State to prove by clear and convincing evidence that termination of parental rights is in the best interest of the child. Santosky, supra. Additional and *869 substitute safeguards do exist.[1] While we agree that any one of these would be costly and take a great deal more time than a normal proceeding, these reasons are no justification for terminating the proceedings in light of the fact that the only other alternative — that taken by the trial court— is to deprive the minor child of the opportunity for adoption and consign him to foster care for an indeterminate period of time.
The state has a significant “parens patriae” interest in the welfare of children residing here and a fiscal interest in eliminating the costs of maintaining children in its custody. State In the Interest of A.E., supra. We conclude that where the State’s interest as “parena patriae” parallels the strong interests of the child in having parental rights terminated, then the parental rights of Barber in being able to accurately hear the entire proceedings are outweighed. See, State In the Interest of S.A.D., P.M.D. and C.T.D., 481 So.2d 191 (La.App. 1st Cir.1985). This is even more significant in light of the fact that Barber’s hearing impairment will not improve, that he has a long history of criminal activity and is currently serving a ten year prison term. It is not /likely that Barber will be any better capable of assisting his appointed counsel than he is at the present time.
After considering the relevant precedents and assessing the several interests that are at stake, as well as the risk of error, we find the balance favors permitting the state to proceed with its efforts to terminate parental rights.
For the foregoing reasons, the trial court’s order dismissing the state’s petition is vacated; and the matter is remanded.
VACATED AND REMANDED.

. (1) transcribe the proceedings and reset the trial to afford Barber an opportunity to review the transcript and return to the Court for cross-examination of the witnesses. (2) Real-Time translation, whereby the testimony is shown on a computer screen as it is taken, with a 5 to 30 second delay. (3) Use of a word processor and a typewriter which would transcribe the testimony as the trial progressed so that Barber can read the testimony as the case progresses.