# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 15-136

## STATE IN THE INTEREST OF H. R., B. R., B. S.

**********

APPEAL FROM THE
THIRTEENTH JUDICIAL DISTRICT COURT
PARISH OF EVANGELINE, NO. J-6910
HONORABLE JOHN LARRY VIDRINE, DISTRICT JUDGE

**********

## JOHN E. CONERY
## JUDGE

**********

Court composed of Jimmie C. Peters, John E. Conery, and David Kent Savoie, Judges.

**AFFIRMED.**

**L. R. (father)**
**Pointe Coupee Parish Prison**
**Post Office Box 248**
**New Roads, Louisiana 70760**
**PRO-SE APPELLANT**

**L. Antoinette Beard**
**825 Kaliste Saloom Road**
**Brandywine 3, Room 150**
**Lafayette, Louisiana 70508**
**(337) 262-1555**
**COUNSEL FOR APPELLEE:**
**State of Louisiana, Department of Children & Family Services**

**Trent Brignac**
**District Attorney**
**Julhelene E. Jackson**
**Assistant District Attorney**
**13th Judicial District**
**Post Office Drawer 780**
**Ville Platte, Louisiana 70586**
**(337) 363-3438**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**Mahogany Watkins**
**Acadiana Legal Services Corporation**
**620 Murray Street**
**Alexandria, Louisiana 71301**
**(318) 442-6240**
**COUNSEL FOR APPELLEES:**
**H. R. (child)**
**B. R. (child)**
**B. S. (child)**

**CONERY, Judge.**

The State of Louisiana, Department of Children and Family Services (State) filed a motion for termination of parental rights approximately two and one half years before a final hearing. The trial court terminated the parental rights of the mother J.S. and the father L.R, with respect to their minor daughters H.R., B.R., and B.S.[1] Only the father, L.R., appeals the trial court's denial of a further continuance of the termination proceedings and the October 14, 2014 judgment terminating his parental rights.[2] For the following reasons, we affirm.

## FACTS AND PROCDURAL HISTORY

On October 1, 2010, by virtue of a written instanter order, the three minors, H.R. (born December 5, 2002), B.R. (born February 1, 2005), and B.S. (born February 1, 2006), came into the custody of the Louisiana Department of Children and Family Services (formerly the Department of Social Services). The October 1, 2010 order was based on allegations that, J.S., the mother, was in treatment for drug addiction and L.R., the unmarried father, was in treatment for a gambling addiction. Consequently, the State claimed that there was no one, including J.S's parents, available to care for the three minors. J.S. had requested that the State take custody of the three children. At a hearing on October 4, 2010, the trial court signed an order of continued custody, which provided that the children were to remain in the custody of the State.

---

[1] Pursuant to Uniform Rules–Courts of Appeal, Rules 5-1 and 5-2, the initials of the parties will be used to protect and maintain the privacy of the minor children involved in the proceeding.

[2] The trial court's judgment signed October 14, 2014 terminated the parental rights of both L.R. and J.S. However, J.S. did not appeal, thus, the termination of her parental rights is not presently before this court.

A petition was filed on October 18, 2010 alleging that the children should be adjudicated "Children In Need of Care." On November 10, 2010, an adjudication and disposition hearing was conducted. The trial court found that the three minors were "Children in Need of Care," adjudicated them as such, and placed custody of the children with the State. A case plan dated October 29, 2010, was also made part of the record of the proceedings.

At the first review hearing on April 15, 2011, the permanent plan ordered by the trial court was reunification of the parents with their children. As of the April 15, 2011 review hearing, J.S. was in partial compliance with her case plan, and L.R. was deemed uncooperative, having failed to provide an accurate address. The case review hearing order stated, "L.R. does not accept responsibility for the children entering into the state's custody." The parents were ordered to comply with the case plan dated October 29, 2010, with reunification of the family as the permanent plan. The trial court scheduled the next review hearing for October 31, 2011.

However, prior to the scheduled October hearing, allegations of sexual abuse of the three minors by both J.S. and L.R. were validated. On October 21, 2011, both parents were appointed legal representation, and for all subsequent legal proceedings, each had been represented by separate legal counsel. At the review hearing held on October 31, 2011, the record reflects that, as of that date, L.R. had not completed any components of his case plan. Likewise, J.S. had "done very little on her case plan." After the hearing on October 31, 2011, the permanent plan ordered by the trial court was changed to adoption. Both parents were ordered by the trial court to comply with the case plan dated October 20, 2011.

In the permanency and case review hearings held from October 31, 2011 forward, including April 24, 2012, October 24, 2012, May 13, 2013, and October

29, 2013, the trial court continued to order adoption as the permanent case plan for the three minors. From October 1, 2010 to date, H.R., B.R., and B.S. have remained together in their initial placement in a foster home and in the custody of the State. The trial court maintained this custody plan on its docket from its inception in October 2010.

On March 5, 2012, the State filed a formal "Petition for Termination of Parental Rights and Certificate of Adoption" (State's Petition) seeking to terminate the parental rights of both J.S. and L.R. to clear the way for the foster parents to adopt the three minors. Trial on the petition was originally scheduled for May 4, 2012. However, at the trial on the State's Petition held on October 24, 2012, the trial court expressed its reluctance to proceed on the termination of L.R.'s rights until resolution of the criminal proceedings pending against him in Point Coupee Parish.

The State's Petition was rescheduled an additional four times to accommodate L.R.'s criminal proceedings, November 30, 2012, March 5, 2013, July 19, 2013, and September 25, 2013. The additional continuances of the trial on the State's Petition set for April 9, 2014, June 25, 2014, and August 6, 2014, were due to the absence of a parent and or counsel. The State's Petition was finally set, noticed, and heard by the trial court on October 8, 2014.

At the conclusion of the case review hearing on October 8, 2014, the trial court denied L.R.'s motion for another continuance of the trial on the termination of his parental rights for reasons stated on the record. The State's Petition against both J.S. and L.R then proceeded. The trial court, for reasons stated on the record in open court, terminated the parental rights of J.S. and L.R. to their minor daughters H.R., B.R., and B.S. The trial court based its decision on two of the

three of the State's alleged grounds for termination of J.S. and L.R.'s parental rights, La.Ch.Code arts. 1015 (4)(b) and 1015(5).[3]

Louisiana Children's Code Article 1015(4)(b) provides:

The grounds for termination of parental rights are:

(4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:

(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.

Louisiana Children's Code Article 1015(5) provides:

The grounds for termination of parental rights are:

5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

The judgment rendered in open court on October 8, 2014 was formally signed by the trial court in a judgment rendered on October 14, 2014. The October 14, 2014 judgment was timely appealed only by L.R., pro se.

## ASSIGNMENT OF ERROR

L.R. only asserts one assignment of error on appeal:

---

[3] The trial court did not base its judgment on La.Ch.Code art.1015(3). Louisiana Children's Code Article 1015(3) contains provisions pertaining to the sexual abuse of a minor by a parent. The record reflects that the trial court specifically limited any testimony at the trial concerning this aspect of the case.

The Trial Court Erred by Rescinding its previously imposed court order on the morning of the Termination Hearing without granting a Continuance to Allow [Appellant] to Properly Prepare a Defense.

L.R. also requests that this court review the entire record in order to insure "Fairness and Due Process," and that this court review the entire record based on a claim in his briefing to this court that "he has been Denied his Constitutional Rights to Due Process." L.R. further requests that this court set aside the trial court's October 14, 2014 judgment.

## LAW AND DISCUSSION

### Assignment of Error One-Denial of the Continuance Requested by L.R.

L.R. contends that the trial court committed reversible error in failing to grant his motion for a continuance of the trial scheduled for October 8, 2014 on termination of his parental rights. L.R. contends that the trial court "issued an Order that No Action would be taken against [L.R.] until the Criminal Charges in Point Coupee Parish were Resolved." The record reflects that no such order exists, however, the minute entry of October 24, 2012 states, "The court . . . found that it is not ready to terminate L.R.'s rights until further action of Pointe Coupee Parish Court."

The record demonstrates the trial court's futile attempts to accommodate L.R., as trial of the State's Petition, filed on March 5, 2012, was fixed on seven different occasions before finally being heard on October 8, 2014. Four of the trial fixings were continued to accommodate L.R.'s pending criminal charges in Point Coupee Parish. The additional three trial fixings were due to absence of counsel or of a parent. However, the record is also clear that L.R.'s prior trial dates had been continued without an end in sight. At the October 8, 2014 hearing, the trial court became concerned that a further continuance would be detrimental to the best

interests of the children. The State contends and the record reflects that at the previous hearing on August 6, 2004, L.R. had been informed by the trial court that no further continuances would be entertained and that the trial would proceed on October 8, 2014.

On the morning of October 8, 2014, it appeared that L.R.'s criminal trial had once again been continued to February 23, 2015, and L.R. once again moved for a continuance. The trial court, in its colloquy with counsel and L.R. on the record at the hearing, denied L.R.'s request for a continuance:

**BY MS. WATKINS:**

Is this termination hearing in just regards to [J.S.] or is it in regards to [L.R.]?

**BY THE COURT:**

I assumed it was both.

**BY MS. BEARD:**

Oh yes, yes sir.

**BY MR. PUCHEU:**

Your Honor are you rescinding the order that you stated earlier that until he was finished with his criminal trial we would not have a hearing?

**BY THE COURT:**

I'm rescinding it yes.

**BY MR. PUCHEU:**

Okay.

**BY L.R.:**

Well we didn't have time to prepare. I mean I didn't have time to prepare. You had an order for two years Your Honor.

**BY THE COURT:**

Pardon.

**BY MR. PUCHEU:**

He's stating that he did not have time to prepare for this because he did not think we would have such a hearing until his trial.

**BY THE COURT:**

Well let me think.  You know this thing will stay in limbo forever because I have the advantage of having heard this thing four or five times already.

**BY MS. JACKSON:**

Yes sir.

**BY THE COURT:**

In two and a half months I'm leaving the bench and headed for the happy fields of retirement where I don't have to listen to such painful things anymore.  Then you gonna come in with some new judge who doesn't have the slightest clue what this case is all about.

**BY L.R.:**

And Your Honor that's understandable but I at least ask for time to prepare a defense.  I mean…

**BY MR. PUCHEU:**

Request a continuance.

**BY MS. BEARD:**

Your [Honor] we would object.  I believe at the last hearing…

**BY THE COURT:**

Well it might be reversible error but I'm going to say we're going forward with it.

. . . .

**BY MS. BEARD:**

Yes Your Honor.  The State would call Ms. Carla Bollich to the stand and Your Honor for the record I would note that at the pre…at the last

hearing Your Honor did indicate that we were going to proceed with regard to [L.R.] whether or not he had completed, had finalized his uh…criminal charges.

**BY THE COURT:**

Alright, Swear her in.

*Standard of Review*

In *Walsh v. Morris*, 07-579, pp. 4-5 (La.App. 3 Cir. 10/31/07), 970 So.2d 94, 96-97, *writ denied*, 09-478 (La. 4/17/09), 6 So.3d 795, a panel of this circuit stated the standard of review and factors that should be considered by the trial court in granting or denying a motion for continuance:

> "[A] continuance may be granted in any case there is good ground therefor." La.Code Civ.P. art. 1601. The trial court has great discretion in granting or denying a motion for a continuance, and denial of a continuance will not be disturbed on appeal, unless the trial court is shown to have abused its discretion. *Jackson v. Royal Ins. Co.,* 97-723 (La.App. 3 Cir. 12/17/97), 704 So.2d 424. Whether a trial court should grant or deny a continuance depends on the particular facts of each case.
>
> Some factors to consider in denying or granting a continuance are diligence, good faith, and reasonable grounds. *Demopulos v. Jackson,* 33,560 (La.App. 2 Cir. 6/21/00), 765 So.2d 480. Fairness to both parties and the need for orderly administration of justice are additional considerations in deciding whether to grant or deny a continuance. *Gilcrease v. Bacarisse,* 26,318 (La.App. 2 Cir. 12/7/94), 647 So.2d 1219, *writ denied,* 95-421 (La.3/30/95), 651 So.2d 845.

Based on the record before us, we find that the trial court had more than sufficient grounds to deny L.R.'s motion for continuance and proceed with the trial for termination of L.R.'s parental rights scheduled on October 8, 2014. The minor children had been in the care of the State for some four years after their mother, J.S., surrendered them to the custody of the State on October 1, 2010.

The evaluations of the minor children reflect that they had continued to make progress emotionally, socially, and in their educational pursuits while living

8

with their foster parents. Both the foster parents and the State were anxious to make the situation of the minor children permanent. As of the October 8, 2014 hearing, the foster parents stood ready and were willing to adopt the three minor children, thus keeping them together as a family unit.

On October 8, 2014, L.R.'s situation remained virtually unchanged since the trial court's initial continuance on October 24, 2012. The initial continuance was based on the trial court's reluctance to terminate L.R.'s parental rights until after the resolution of the pending criminal charges lodged against him in Point Coupee Parish. However, on October 8, 2014, some two years later and two and a half years from the filing of the State's Petition, L.R.'s criminal proceedings remained unresolved. In weighing the equities and in the face of his eminent retirement, the trial judge denied L.R.'s request for continuance in order to resolve the issue of termination of L.R.'s parental rights and provide for stability for the children.

In light of the multiple continuances of L.R.'s criminal proceedings, and faced with yet another continuance of those proceedings to February 23, 2015, the trial court, which had handled the case from its inception, chose to proceed with the termination proceedings as scheduled, thus, resolving the issue of L.R.'s parental rights and providing permanency and stability for three minor children and their potential adoptive parents. The alternative would have continued to leave three children and their foster parents in "limbo" indefinitely. In the judgment of the trial court, such a ruling would not have been in the children's best interests, as their need for permanency and stability far outweighed L.R.'s wish to have his criminal proceeding resolved.

Considering the trial court's considerable discretion in granting a continuance, we find the trial court did not abuse its vast discretion in denying

9

L.R.'s motion for a further continuance. *Walsh*, 970 So.2d at 96-97; La.Code Civ.P. art. 1061. We therefore find that L.R.'s assignment of error is without merit.

**Request for Review of the Record Relating to L.R.'s Due Process Rights**

L.R. did not assign as an error on appeal that "he has been Denied his Constitutional Rights to Due Process." Louisiana Code of Civil Procedure Article 2129 does not require an assignment of errors on appeal and states, "An assignment of errors is not necessary in any appeal." However, Uniform Rules-Courts of Appeal, Rules 1-3 provide for review of "only issues which were submitted to the trial court and which are contained in specifications or assignments of error, unless the interest of justice clearly requires otherwise." The record does not indicate that L.R. made any objection to the trial court in relation to his "due process rights." However in an abundance of caution and in an effort to resolve all issues raised by L.R. in his pro se capacity, we review the record for due process violations.

Our review of the record, stated in the facts and procedural history portion of this opinion, reflect that L.R. was granted and received the constitutional protections to which he was entitled. L.R. received notice of the hearing dates of both the review hearing and termination proceedings. L.R. was represented by counsel throughout the entire period of the termination proceedings for his minor daughters, H.R., B.R., and B.S. L.R. was given some two and one half years in order to work his case plan. He had two years to prepare for the termination proceedings, which were timely noticed and finally heard by the trial court on October 8, 2014.

10

During the trial, L.R. requested and was granted the right to question the witnesses in the case in place of his attorney of record, who was present and prepared to assist him, as he had been throughout these proceedings for over a two year period. L.R. called two witnesses on his own behalf, the parents of J. S., who are also the grandparents of the minors, H.R., B.R., and B.S. Therefore, we find no support in the record for L.R.'s claim that he was denied his right to due process in connection with the trial held by the trial court terminating his parental rights to H.R., B.R., and B.S.

### L.R.'s Request to Set Aside the Trial Court's October 14, 2014 Judgment

L.R. asks this court to reverse the trial court's October 14, 2014 judgment and that he "be given the opportunity to comply with a Case Plan once released from custody and charges in Pointe Coupee Parish concerning his children be resolved." The standard of review applicable to L.R.'s request was recently stated in *State in the Interest of J.K.G. and J.L.G*, 11-908, p. 5 (La.App. 3 Cir. 1/11/12), 118 So.3d 10, 14, "A trial court's findings on whether or not parental rights should be terminated are subject to the manifest error standard of review."

The trial court ruled in favor of the State, finding clear and convincing evidence to support the termination of L.R.'s parental rights under the provisions of both La.Ch.Code art. 1015(4)(b) and 1015(5). *See State ex. rel J.A.*, 99-2905 (La. 1/12/00), 752 So.2d 806 (citing La.Ch.Code art. 1035(A)).[4] The trial court further found that the termination of L.R.'s parental rights to H.R., B.R., and B.S. was in the children's best interest. *See State ex rel. G.J.L.*, 00-3278 (La. 6/29/01), 791 So.2d 80.

---

[4] Louisiana Children's Code Article 1035(A) states, "The petitioner bears the burden of establishing each element of a ground for termination of parental rights by clear and convincing evidence."

11

The trial court's judgment signed on October 14, 2014 stated in pertinent part:

> After consideration of the pleadings, argument of counsel and evidence presented, and the court having found, for reasons orally assigned: That the State of Louisiana, Department of Children and Family Services has met its burden of proof under Louisiana Children's Code Articles 1015(4) and 1015(5), in regard to the parents, **J.S** and **L.R.**; That said parents have failed to provide significant contributions to their children's care and support for a period of six consecutive months; that said parents have failed to substantially comply with their case plans; that there is no reasonable expectation of significant improvement in said parents' condition or conduct in the near future; and that termination of parental rights is in the best interests of the minor children, as the children are placed together in an adoptive placement, where they have been for four (4) years[.]

(Emphasis in original.)

L.R. claims that he was unable to complete his case plan and pay child support due to his incarceration. However, the record reflects that L.R. made no attempt, even when he was released from custody on three occasions during the four years the minors were in the State's custody, to cooperate with the case workers or comply with the case plan ordered by the trial court, which included payment of a parental contribution of only ten dollars per child per month.

L.R.'s failure to cooperate from the beginning of the State's involvement with the three minors is clearly documented in the record of the first "CASE REVIEW HEARING," held on April 15, 2011. As of the date of the initial hearing, the children had been in the State's custody for approximately six months. The trial court set the second review hearing for October 31, 2011 and ordered the parents to comply with the October 29, 2010 case plan of reunification of the family as the permanent plan.

However, just prior to the scheduled October hearing, the allegations of sexual abuse were validated against J.S. and L.R., which prompted the appointment of separate counsel for both parents and a revision of the case plan on October 20, 2011, with adoption as the permanent plan for all three children.

L.R. testified at the termination proceedings when questioned why he failed to comply with the case plan as follows:

Q. Okay. And uh...at the time of your release uh...was it ordered that you remain under house arrest during that time?

A. Yes it was.

Q. And was that a reason that you could not cooperate with your case plan that was provided to you by the State?

A. That...that was a reason but the overwhelming reason was the fact that the case plan changed from reunification to adoption and terminating parental rights. So I'm thinking why would I agree to comply with this if they're gonna continue to try to terminate my parental rights regardless if I do everything they say or if I don't do everything they say. I mean I just, to me that just doesn't make sense but the overwhelming thing was the fact that I've been incarcerated for the latter part of the past four years.

As previously indicated, the State's Petition also contained allegations of sexual abuse of the three minors by L.R., pursuant to La.Ch.Code art. 1015(3). L.R. is presently incarcerated and awaiting trial on criminal charges stemming from the State's allegations. However, the trial court did not base its judgment on La.Ch.Code art. 1015(3) and very carefully avoided any testimony on this issue at the termination proceedings. L.R. testified that, on advice of his attorney, he did not intend to work on any of the components of the case plan until after his trial. Based on the trial court's judgment, it is clear that L.R.'s decision not to cooperate with the State after criminal charges were filed played no part in the trial court's judgment.

Despite L.R.'s claim, incarceration is not a defense to termination of parental rights for failure to pay child support, La.Ch.Code art. 1015(4)(b), or for failure to comply with the court ordered case plan, La.Ch.Code art. 1015(5). A panel of this court in *State in Interest of J.K.G.*, 118 So.3d at 15 discussed the claim of incarceration by a parent as a defense in a termination of parental rights proceeding and affirmed the termination of the parent's rights:

> S.K.G. was given an opportunity to present evidence of "just cause" for his failure to provide for his children's care and support, but did not do so. " '[J]ust cause' is an affirmative defense which allows a parent, after the state has proved abandonment for failure to provide for the children's care and support, to prevent termination by proving that the failure was with just cause and excusable." *Id.* at 92, (citing *State in the Interest of M.L.,* 95–45 (La.9/5/95), 660 So.2d 830). "Incarceration is not a just cause defense to failure to support children or maintain contact with them in a termination of parental rights case if the parent is incarcerated as a result of his own actions." *Id.* (citing *State in the Interest of J.T.C.,* 04–1096 (La.App. 5 Cir. 2/15/05), 895 So.2d 607).

L.R. was also given the opportunity to present "just cause" after the testimony and evidence was presented by the State at the hearing. The record before this court demonstrates that L.R., despite periods where he was not incarcerated while the children were in the custody of the State, never took the steps necessary to prevent the termination of his parental rights.

As affirmed in *State ex .rel. D.R.B.*, 00-1321, p. 7 (La.App. 3 Cir. 12/6/2000), 777 So.2d 508, 513:

> Jurisprudence holds that "[a] parent who professes an intention to exercise his or her parental rights and responsibilities must take some action in furtherance of the intention to avoid having those rights terminated." *State in Interest of S.M., et al.,* 98-0922, p. 9 (La.10/20/98); 719 So.2d 445, 450 (quoting *State in Interest of J.M.,* 30,302, p. 7 (La.App. 2 Cir. 10/29/97); 702 So.2d 45, *writ denied,* 97-2924 (La.2/6/98); 709 So.2d 736).

14

In addition, his present incarceration is "the result of his own actions." *State in the Interest of J.T.C.*, 895 So.2d at 616. L.R. testified at the termination proceeding that in December 2012 he was released on bond, but subject to house arrest. However, he decided to travel to Aurora, Colorado without the trial court's permission and in violation of the conditions of his bond because he had a pre-planned trip with round trip tickets. Subsequently, L.R.'s bond was revoked, and he was extradited back to Louisiana from Colorado and remains incarcerated to this date.

L.R.'s parental rights are balanced against the rights of the three minor children and what would serve their best interests, which takes precedence over the rights of the parents. In *State in the Interest of S.M.*, 98-922, pp. 14-15 (La. 10/20/98), 719 So.2d 445, 452, the supreme court summed up the dynamic at play and stated:

> More than simply protecting parental rights, our judicial system is required to protect the children's rights to thrive and survive. *State in Interest of GA,* 664 So.2d at 114 (citing *State in Interest of JL,* 93-352 (La.App. 3 Cir. 5/18/94), 636 So.2d 1186, 1192). Furthermore, a child has an interest in the termination of rights that prevent adoption and inhibit that child's establishment of secure, stable, long term, continuous family relationships. *State in Interest of J.M.,* 702 So.2d at 50; *State in Interest of T.S.B.,* 532 So.2d 866 (La.App. 4 Cir.1988), *writ denied,* 536 So.2d 1239 (La.1989). While the interest of a parent is protected in a termination proceeding by enforcing the procedural rules enacted to insure that parental rights are not thoughtlessly severed, those interests must ultimately yield to the paramount best interest of the children. See *State in Interest of T.S.B.,* supra; *State in Interest of S.A.D.,* 481 So.2d 191 (La.App. 1 Cir.1985); *State in Interest of A.E.,* 448 So.2d 183 (La.App. 4 Cir.1984); *State in Interest of Driscoll,* 410 So.2d 255 (La.App. 4 Cir.1982).

At the time the termination proceedings were held on October 8, 2014, the three minors had been in the custody of the State for four years. They were initially placed with foster parents that had applied to adopt the three siblings, thus

allowing them to remain together in a secure family unit. All three minors, now ages twelve, ten, and nine, testified at the trial. Each child expressed their wish to be adopted by their foster parents and remain together.

The trial court delayed the termination proceedings for approximately two years to allow L.R. to resolve his pending criminal charges, but at last moved forward and terminated L.R.'s rights, finding that the children's best interest would be served by allowing them to be adopted by their foster parents. Therefore, we find no manifest error in the trial court's judgment dated October 14, 2014, which terminated the parental rights of L.R. to his three minor children H.R., B.R., and B.S.

### CONCLUSION

For the reasons assigned, we affirm the judgment of the trial court dated October 14, 2014, terminating the parental rights of L.R. to his minor daughters H.R., B.R., and B.S. finding that the trial court did not abuse its discretion in denying L.R. a continuance of the termination proceedings or commit manifest error in its ruling. We also find the record reflects no violation of L.R.'s right to due process in connection with the proceedings held by the trial court terminating L.R.'s parental rights. Costs of this appeal are assessed to L.R.

**AFFIRMED.**

16