STATE OF LOUISIANA IN THE INTEREST OF THE MINOR CHILDREN: K.C.; L.C.; AND E.C.

\*

NO. 2025-CA-0529

\*

COURT OF APPEAL

\*

FOURTH CIRCUIT

\*

STATE OF LOUISIANA

\* \* \* \* \* \* \*

APPEAL FROM
ST. BERNARD 34TH JUDICIAL DISTRICT COURT
NO. 28-082-J, DIVISION "A"
Honorable William M McGoey, Judge
\* \* \* \* \* \*
**Chief Judge Roland L. Belsome**
\* \* \* \* \* \*

(Court composed of Chief Judge Roland L. Belsome, Judge Karen K. Herman, Judge Monique G. Morial)


Jane Hogan
ATTORNEY AT LAW
310 N. Cherry Street, Suite 1
Hammond, LA 70403

    COUNSEL FOR APPELLANT


Mary Mustaller McMillan
SOUTHEAST LOUISIANA LEGAL SERVICES
1340 Poydras Street, Suite 600
New Orleans, LA 70112

    COUNSEL FOR DEFENDANT

                        **AFFIRMED**
                  **OCTOBER 14, 2025**

In this case, the mother of three minor children contests the judgment of the trial court that terminated her parental rights. For reasons that follow, we affirm the trial court's judgment.

On March 12, 2023, the Department of Children and Family Services ("DCFS") received a report alleging that the children's mother ("Appellant") was involved in a physical altercation with their father, "K.C."[1] in the presence of their three children – E.C. (age 4); L.C. (age 2); and K.C. (age 1).[2] Appellant was arrested for domestic abuse battery and outstanding warrants and K.C. was arrested for outstanding warrants.[3] DCFS took the children into care that same day. The children were placed briefly with their paternal grandfather. He returned the children to DCFS because he was unable to care for them.

### Prior proceedings

DCFS applied for an oral order of removal that was granted on March 31, 2023. The children were adjudicated as children in need of care on grounds of

---

[1] Proper names are not used in this opinion in order to protect the children's identities.
[2] The children's ages are given as of the time of the parent's arrest.
[3] Unrebutted trial testimony showed that Appellant tested positive for marijuana and cocaine at the time of her arrest.

1

neglect by an order dated June 7, 2023. DCFS placed the children in foster care.[4]

DCFS developed a case plan for Appellant and K.C. to re-unite the family. The plan for Appellant included domestic violence and anger management training; parenting training; and mental health treatment. In addition, the criminal court ordered Appellant to complete in-patient drug abuse treatment and follow-up outpatient treatment.[5]

DCFS filed a petition for termination of both parents' parental rights on January 8, 2025. The department's allegations may be summarized as:

- The children were abandoned by their placement in the physical custody of a nonparent or otherwise leaving them under circumstances demonstrating an intention to permanently avoid responsibility by failing to provide significant contributions to the children's care;[6]

- Appellant failed to substantially comply with the court-ordered case plan by failing to complete court-ordered drug abuse treatment, failing to complete domestic violence and anger management training, and failing to complete individual mental health therapy.

- There is no reasonable expectation of significant improvement in the Appellant's condition or conduct in the near future.

The trial court heard the case over the course of three settings.[7] The court took the matter under advisement after hearings were completed and issued its judgment on June 24, 2025, terminating both parents' parental rights. Only Appellant appeals from that judgment.

---

[4] Two of the children were placed in a home with K.C.'s brother and his wife in Tennessee. The third child was placed in the care of Appellant's sister.

[5] The drug treatment program related to Appellant's arrest on March 12, 2023 as described above. She began treatment pursuant to the criminal court's order but completed it under the DCFS case plan.

[6] Prior to trial, Appellant gave two of the children $54 to share and made a single payment of child support required under the case plan one month before trial.

[7] The hearing dates were separated by several months on April 29, 2025, May 12, 2025, and June 11, 2025.

***Fact summary***

The trial record supports Appellant's contention that she completed the in-patient drug abuse treatment and the follow-up outpatient sessions. However, Appellant acknowledges that she continued to "struggle" with substance abuse issues after completion of the in-patient treatment. Trial testimony revealed that Appellant did not start her outpatient sessions until the seventh time that she was referred for treatment. Appellant tested positive for use of methamphetamines just two weeks after leaving the in-patient treatment center. She also tested positive for alcohol a month after ending outpatient treatment. Appellant testified that she was sober for 8 months as of the date of her trial appearance. However, a hair sample taken one month before trial proved positive for methamphetamines and a second hair sample taken after her testimony tested positive at a level twice as high as the first.[8] Urine samples she gave on the same days as the hair samples were negative for the drug. The witness who administered the tests speculated that it is possible she had not ingested amphetamines but had spent a great deal of time in close proximity to other drug users.

Appellant admitted that she was referred to parenting training four times before completing the requisite number of classes. On the occasion of the third referral, she overslept and missed the intake session and was dismissed from the program before it started. Appellant testified that she attended the number of parenting classes required. However, the DCFS case worker testified that she did

---

[8] Appellant's hair test in March, 2025, was positive for methamphetamine. Appellant testified on April 29, 2025. After Appellant testified, her hair was tested again on May 29, 2025. The social worker responsible for testing took the stand June 11, 2025. He testified that Appellant's hair tested positive for methamphetamines at a level 2 times higher than the March 2025 test.

not complete the program or "graduate" because program administrators reported that she did not gain the knowledge that was intended. Specifically, the report from the parenting program indicated that she was involved in a relationship with "C.T.", a drug user and a registered sex offender.[9] C.T. already has one child that is in foster care. The program administrators said that she denied the relationship and complained that it was unfair to make her choose between C.T. and her children. Appellant was six months pregnant at the time of trial. She admitted that it was possible that C.T. is the father of the unborn child. Based on Appellant's performance in the parenting program, the program administrators recommended against placing the children in Appellant's care.

Appellant "owns" a home that is titled in her father's name. She testified that she planned to sell that home to generate funds to help to support her children. She is presently living with her father and working a part-time job at a grocery store where she earns about $165 per week. Appellant testified that she and her children would live in her father's home if they were re-united. The home that she owns was not habitable at the time of the trial. Appellant had rented the home to drug users who had destroyed the plumbing and electrical systems among other damage.[10]

During the time that the children were in foster care, she did not make financial contributions to the care of their care as required by her case plan. She

_____

[9] C.T. was convicted for having sexual relations with a 10-year-old girl when he was either 17 or 18 years of age.
[10] Testimony at trial indicated that Appellant, K.C. and children were living in squalor.

could not provide a reason why she failed that requirement. Appellant did not maintain consistent contact with her children. She was scheduled to communicate with her out-of-state children by telephone every week. She testified that when she missed calls she was too busy to meet the schedule. The call schedule was later changed to every other week. Appellant made the calls sporadically until the two months before trial when calls were made as scheduled. The DCFS case worker testified that the family members who are caring for the children are willing to adopt them and facilitate a continuing relationship among the siblings. DCFS recommends that solution.

***Standard of review***

This court may not set aside a trial court's findings of fact in the absence of manifest error or if those findings are clearly wrong. *State ex rel. S.M.W.,* 00-3277, p. 14 (La. 2/21/01), 781 So. 2d 1223, 1233. According to the trial court's reasons for judgment, the following facts were proven by clear and convincing evidence:

> …1) it has been more than one year since the children's removal, 2) the parents had not substantially complied with the case plan for services 3) there is no reasonable expectation of significant improvement in the parents' condition or conduct in the near future considering the children's ages and need for a safe, stable home, and 4) that the termination of parental rights is in the best interests of the children.

These findings are consistent with the facts shown by the trial record and are not manifestly erroneous.

*Application of law*

The termination of parental rights is governed by Title X of the Louisiana Children's Code. The preamble to Title X declares the intention of the legislature in creating the framework for terminating parental rights:

> The purpose of this Title is to protect children whose parents are unwilling or unable to provide safety and care adequate to meet their physical, emotional, and mental health needs, by providing a judicial process for the termination of all parental rights and responsibilities and for the certification of the child for adoption. In all proceedings, the primary concern is to secure the best interest of the child if a ground justifying termination of parental rights is proved. Termination of parental rights is to be considered the first step toward permanent placement of the child in a safe and suitable home, and *if at all possible, to achieve the child's adoption.*

La. Ch.C. art. 1001. (emphasis added)

Under circumstances enumerated in La. Ch.C. art. 1004(D), DCFS is authorized to file a petition for termination of parental rights. La. Ch.C. art. 1015 provides the relevant legal bases for the petition filed in the case before us:

> The grounds for termination of parental rights are:
> …
>    (4) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:
>
>    (a) For a period of at least four months as of the time of the hearing, despite a diligent search, the whereabouts of the child's parent continue to be unknown.
>
>    (b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.
>
>    (c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.
>
>    (5) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return

of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

Parents have a fundamental liberty interest of natural parents in the care, custody, and management of their child. *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S. Ct. 1388, 1394 (1982). See also, *State in Int. of T.S.B.,* 532 So. 2d 866, 867 (La. Ct. App. 1988). However, the statutory framework and jurisprudence instructs us that the scales of justice must always tip to the best interest of the innocent children. In *State in Int. of S.M.*, 98-0922, p. 15 (La. 10/20/98), 719 So.2d 445, 452, the court noted the tension between the rights of the parents and those of the children in writing, "While the interest of a parent is protected in a termination proceeding by enforcing the procedural rules enacted to ensure that parental rights are not thoughtlessly severed, those interests must ultimately yield to the paramount best interest of the children."

## *CONCLUSION*

The trial court followed the statutory scheme and the relevant case law. It is clear that the district judge considered the evidence in reaching the factual determinations recited above. The trial court's reasons for judgment cite *State in Int. of L.J.*, 23-1357 p. 12 (La. App. 1 Cir. 12/26/24), 404 So.3d 956, 966, as the basis for applying the correct evidentiary standard of clear and convincing proof. As noted above, we must not overturn the trial court's in the absence of manifest error. Because the record supports the trial court's factual conclusions and the trial judge applied the law correctly, we affirm the trial court's decision to terminate Appellant's parental rights.

**AFFIRMED**