# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 23-634


**STATE IN THE INTEREST OF C.W. & T.W.**


\*\*\*\*\*\*\*\*\*\*


APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. J-2018-169
HONORABLE ERROL DAVID DESHOTELS, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*


## ELIZABETH A. PICKETT
## CHIEF JUDGE


\*\*\*\*\*\*\*\*\*\*


Court composed of Elizabeth A. Pickett, Charles G. Fitzgerald, and Wilbur L. Stiles, Judges.


**REVERSED AND REMANDED.**


**Chad Guidry**
**Attorney at Law**
**P. O. Box 447**
**Kinder, LA 70648**
**(337) 738-2280**
**COUNSEL FOR APPELLANT:**
     **W.W. – father**


**Heath J. Dorsey**
**Department of Children and Family Services**
**1919 Kirkman St.**
**Lake Charles, LA 70601**
**(337) 491-2545**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana, Department of Children and Family Services**

**James Miguez**
**Acadiana Legal Services**
**P. O. Box 2148**
**Lake Charles, LA  70602**
**(337) 738-0377**
**COUNSEL FOR:**
**Juveniles T.W. and C.W.**

**Charles Draughter**
**Attorney at Law**
**4310 Ryan St.. Suite 123**
**Lake Charles, LA   70605**
**COUNSEL FOR:**
**Mother T.D.W.**

**PICKETT, Chief Judge.**

W.W.[1] appeals the judgment of the trial court terminating his parental rights to his children, C.W. and T.W.

**FACTS**

Twins C.W. and T.W. were born on April 2, 2018. Because the children tested positive for amphetamines at the time of their birth, a file was opened with the Department of Children and Family Services (DCFS). Initially, DCFS implemented a Family Services safety plan which included the mother, T.D.W., and the children moving into the home of W.W.'s mother. Concerns arose about both parents' drug use and their compliance with elements of the safety plan, and DCFS filed a Petition for Safety Plan Compliance on December 20, 2018. The minutes of court indicate this matter was dismissed on motion of the state on March 1, 2019.

T.D.W. gave birth to another child in December 2019, who was also exposed to illicit drugs at the time of her birth. At that time, C.W. and T.W. went to live with W.W.'s mother. T.D.W. and W.W. voluntarily relinquished their parental rights to the third child.

The Family Services Plan for C.W. and T.W. ended with W.W.'s mother granted custody of C.W. and T.W. in August 2021. When W.W.'s mother died on Thanksgiving Day of 2021, W.W. took custody of his children.

On December 1, 2021, DCFS initiated an investigation concerning substance abuse by W.W. and T.D.W. On February 19, 2022, W.W. called the DCFS worker because T.D.W. left with the children. In response, T.D.W. reported that W.W. had been on a four-day drug binge. T.D.W. also admitted that she had been using

---

[1] The parties and the minor child are referred to by their initials to preserve their anonymity in this confidential proceeding.

drugs. The DCFS worker learned that W.W. had subsequently been arrested and charged with three counts of possession of controlled dangerous substances. He also had two outstanding warrants and was unable to post bond because of a probation hold.

An Instanter Safety Plan Order for C.W. and T.W. was filed on February 25, 2022. It placed the children in the custody of the state and instituted a safety plan whereby T.D.W.'s mother, K.D., would provide a home for T.D.W., C.W., and T.W., with certain conditions. T.D.W. agreed to the terms of the safety plan, but W.W., who at this time was incarcerated, did not.

The state filed a Child in Need of Care petition on March 25, 2022. At the answer hearing on April 12, 2022, the father had no objection to the children remaining in state custody. At the adjudication hearing on May 4, 2022, the father stipulated that the children were in need of care without admitting any of the allegations raised by DCFS. The court adjudicated C.W and T.W. as children in need of care by judgment dated May 6, 2022.

C.W. and T.W. were moved from a foster home to a prospective adoptive placement in December 2022. Finding that T.D.W. and W.W. had not made progress on their case plan, the court approved a case plan that changed the primary goal of the placement of the children to adoption on March 20, 2023.

The state filed a Petition for Certification of Adoption and Termination of Parental Rights on March 30, 2023, seeking to have both T.D.W.'s and W.W.'s parental rights to C.W. and T.W. terminated. The petition specifically alleged that W.W.'s parental rights should be terminated based on the provisions of La.Ch.Code arts. 1015(5) and 1015(6)[2] and art. 1036. Following a trial on

---

[2] Louisiana Children's Code article 1015 was amended by the legislature in 2023 to delete sections (3) and (9). 2023 La.Acts 271, § 1, effective June 9, 2023.

2

September 1, 2023, at which the DCFS case worker and W.W. were the only witnesses, the trial court found that the state proved grounds for termination of the parental rights of both T.D.W. and W.W. and that termination was in the best interests of C.W. and T.W. The trial court signed a judgment to that effect on September 13, 2023. Only W.W. has appealed the judgment of the trial court.

## ASSIGNMENT OF ERROR

On appeal, W.W. asserts three assignments of error:

1.  Appellant contends the trial court manifestly erred in finding grounds for termination of his parental rights, pursuant to La.Ch.Code art. 1015(5) (his failure to substantially complete his case plan) and art. 1015(6) (his period of incarceration being of such a duration that he will not be able to care for the children for an extended period of time).

2.  Appellant contends the trial court manifestly erred in finding that termination of the appellant's parental rights is in the best interest of the minor children.

3.  Appellant contends the trial court manifestly erred because the state should be barred from terminating [W.W.]'s parental rights during his term of incarceration because DCFS failed to comply with the express language of La.Ch.Code art. 1036.2.

## DISCUSSION

In his first assignment of error, W.W. argues the trial court committed manifest error in finding that the state proved by clear and convincing evidence the grounds for termination alleged. In his third assignment of error, W.W. argues the state failed to comply with the provisions of La.Ch.Code art. 1036.2. We discuss these issues together as they are interrelated in this case.

The supreme court discussed the law applicable to an action by the state to terminate parental rights in *State ex rel. A.T.*, 06-501, p. 5 (La. 7/6/06), 936 So.2d 79, 82:

---

The remaining sections were renumbered, but no change was made to those sections. In this opinion, we refer to the sections as they were numbered at the time the petition to terminate parental rights was filed.

3

Title X of the Louisiana Children's Code governs the involuntary termination of parental rights. Permanent termination of the legal relationship existing between natural parents and children is one of the most drastic actions the State can take against its citizens. However, the primary concern of the courts and the State remains to determine and insure the best interest of the child, which includes termination of parental rights if justifiable statutory grounds exist and are proven by the State. *State ex rel. S.M.W.*, 00-3277 (La.2/21/01), 781 So.2d 1223.

. . . .

In order to terminate parental rights, the court must find that the State has established at least one of the statutory grounds by clear and convincing evidence. *State ex rel. J.A.*, 99-2905 (La.1/12/00), 752 So.2d 806, 811 (citing La. Ch. C. Art. 1035(A); *Santosky v. Kramer*, 455 U.S. 745, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982)). Further, even upon finding that the State has met its evidentiary burden, a court still must not terminate parental rights unless it determines that to do so is in the child's best interests. La. Ch. C. Art. 1039; *State ex rel. G.J.L.*, 00-3278 (La.6/29/01), 791 So.2d 80, 85.

On review, this court will not overturn the findings of fact of the trial court in a termination proceeding unless the trial court committed manifest error or is clearly wrong. *In re A.J.F.*, 00-948 (La. 6/30/00), 764 So.2d 47.

At the time the petition for termination of parental rights in this matter was filed, Louisiana Children's Code article 1015 stated, in pertinent part:

The ground for termination of parental rights are:

. . . .

(5) Abandonment of the child by placing him in the physical custody of a nonparent, or the department, or by otherwise leaving him under circumstances demonstrating an intention to permanently avoid parental responsibility by any of the following:

(a) For a period of at least four months as of the time of the hearing, despite a diligent search, the whereabouts of the child's parent continue to be unknown.

(b) As of the time the petition is filed, the parent has failed to provide significant contributions to the child's care and support for any period of six consecutive months.

4

(c) As of the time the petition is filed, the parent has failed to maintain significant contact with the child by visiting him or communicating with him for any period of six consecutive months.

(6) Unless sooner permitted by the court, at least one year has elapsed since a child was removed from the parent's custody pursuant to a court order; there has been no substantial parental compliance with a case plan for services which has been previously filed by the department and approved by the court as necessary for the safe return of the child; and despite earlier intervention, there is no reasonable expectation of significant improvement in the parent's condition or conduct in the near future, considering the child's age and his need for a safe, stable, and permanent home.

(7) The child is in the custody of the department pursuant to a court order or placement by the parent; the parent has been convicted and sentenced to a period of incarceration of such duration that the parent will not be able to care for the child for an extended period of time, considering the child's age and his need for a safe, stable, and permanent home; and despite notice by the department, the parent has refused or failed to provide a reasonable plan for the appropriate care of the child other than foster care.

As noted, between the time of the filing of the petition and the trial of this matter, amendments to the statute went into effect to renumber the above sections (5) – (7) as sections (4) – (6).  At trial, though, the parties referred to the pre-amendment section numbers, as evidenced by this colloquy between the trial court and counsel for DCFS:

THE COURT:

What are we going on, exactly, on the grounds for termination? Are you talking about grounds number - -

MR. DORSEY [Counsel for DCFS]:

For mom we allege violation of 1015(6), the case plan. For dad we allege no contributions under 1015(5) and lack of sufficient contact under 1015(5).

THE COURT:

I think it is 1015(7).

MR. DORSEY:

5

I'm sorry.

THE COURT:

1015(7). It when the parent is incarcerated for a period of time that they cannot be reasonably expected to - -

MR. DORSEY:

We did not allege that particular - - what that requires is, that could be an allegation that we served the individual with what is called a TPR 2 and 2A. And basically they have to give us a name of someone that that per a reasonable - - reasonable address of someone who could take, who could have the children there. So, I didn't have evidence of that so I did not allege it.

THE COURT:

All right.

MR. DORSEY:

It also - - I could also allege that he had been convicted of a crime and would be gone so long that that would be a termination, but I don't believe I alleged that either.

In its oral ruling, the trial court gave the following reasons for termination

W.W.'s parental rights:

With respect to dad, it is a little bit more concerning. Dad is incarcerated obviously for things that he did to get that way. And from what I understand his sentence was ten years, all of that, or suspended four, maybe have to serve six. And mostly as a result of that he is not able to be a parent to his children. But the track record of dad prior to incarceration is not the best. He was far from an exceptional dad before his incarceration. He admits that there was issues with drugs, substance abuse, and other criminal activity, and that he basically voluntarily allowed or permitted his mother to have custody of the children because he was not in a position at that time when the children were quite young to care for his children. And that behavior, eventually, landed him in jail for a long period of time. So when the Court looks at the grounds for involuntary termination of parental rights, although maybe not specifically alleged, I do refer to Article 7 in culmination with not being able to support your children, not being able to have sufficient contact with your children, that are in 1015(6). Not being able to work the case plan sufficiently. All of those apply. And they apply mostly because he is incarcerated for such a duration. But he is not able to care for his children for an extended period of time. Considering the children's age and their need for a safe, stable,

6

and permanent home. They are young. They are only 5 years old. So, the Court also sees that the children are in good placement right now with the foster care. They are thriving in that home. So, the Court does find that there is sufficient proof to terminate parental rights of mom and dad, and that it is in the best interest of the children that termination of parental rights be granted, and that they be freed for adoption.

In his brief to this court W.W. argues that the state failed to prove the grounds for termination in sections (5) and (6) of the amended version of La.Ch.Code art. 1015, the failure of W.W. to substantially complete his case plan and an extended period of incarceration. As noted from the above colloquy, though, the state specifically denied that it was seeking termination of W.W.'s parental rights on the basis of an extended period of incarceration, as it admitted failing to comply with certain requirements and would be unable present evidence to prove incarceration as grounds for termination of parental rights. But it is also clear from the trial court's reasons for ruling that the trial court found W.W.'s extended incarceration was a significant factor in the determination that the state proved grounds for termination.

Further, the only grounds for termination of W.W.'s parental rights actually argued by the state at the close of the hearing were lack of parental contributions and lack of sufficient contact with the children. While the state presented evidence that W.W. failed to comply with his case plan, the state did not argue that W.W.'s failure to comply with his case plan or his extended incarceration for an extended period time was the grounds upon which it sought termination of parental rights. The judgment signed by the trial court, though, listed Articles 1015(5), 1015(6), and 1036 as the specific grounds for finding termination was appropriate.

W.W. does not argue that the state failed to prove that he failed to remit parental contributions. At the trial of this matter, he explained that his incarceration prevented him from doing so. Even after he began a work-release

program, W.W. testified that he was unable to access the money he earned to make parental contributions because he did not have access to the money he earned. W.W. did argue that he did communicate with his children for a time, either by video calls when T.D.W. exercised visitation or by contacting the children's foster parents directly. The DCFS worker testified that she was unable to facilitate calls with the children after her work hours, even when that was the only time W.W. was available because of his work release schedule.

We note that W.W. was incarcerated from the time the instanter order was issued in this case to the date of the trial on the petition for termination of his parental rights. Louisiana Children's Code Article 1036.2 sets forth the responsibilities of DCFS in such a situation:

> A. An incarcerated parent of a child in the custody of the department shall provide a reasonable plan for the appropriate care of his child other than foster care. Failure by the incarcerated parent to provide an appropriate plan may result in an action to terminate his parental rights.
>
> B. Within thirty days of notification that a parent of a child in foster care is incarcerated in this state, a representative of the department shall visit the incarcerated parent and give written notification to the incarcerated parent of his duty to provide a reasonable plan for the appropriate care of the child. The department, at that time, shall obtain information regarding the plan, including the names, addresses, cellular numbers, telephone numbers, and other contact information of every potential suitable alternative caregiver.
>
> C. The incarcerated parent shall provide the department with the required information in writing within sixty days of receipt of the notification form. During that period, a parent may submit additional information or names of other caregivers using the form attached to the notice. The department shall provide the parent with a stamped, self-addressed envelope for this purpose. No additional caregiver names will be accepted after the expiration of the sixty-day period, as evidenced by a postmark.
>
> D. The department shall conduct an assessment of the persons named as caregivers by the incarcerated parent and shall notify the parent within ten days of completion of the assessment whether the persons named are willing and able to offer a wholesome and stable environment for the child.

The record in this case shows that, despite knowing from the day the children were taken into custody that W.W. was incarcerated, DCFS never took steps to comply with this article. We recognize that incarceration is not a "just cause" for failure to provide support or maintain contact with one's children. *See State in the Interest of H.R.*, 15-136 (La.App. 3 Cir. 6/3/15), 165 So.3d 1221. Unlike the parent in *H.R.*, though, the father in this case was incarcerated during the entire pendency of this litigation. The state failed to comply with the mandatory requirements of La.Ch.Code art. 1036.2, and admitted as much during the trial, stating that DCFS did not allege his incarceration as a grounds for termination because of its failure to comply with the provisions of this statute. Further, the reason W.W. could not comply with the provisions of his case plan, maintain contact with his children, or provide any monetary support was because of his incarceration for the entire pendency of this litigation, from the time the state took custody of the children until the date of the trial.

The undisputed testimony of W.W. was that during his imprisonment, he took parenting classes for eight weeks and a re-entry program that included money management, anger management, substance abuse treatment, and parenting. He also testified that he was screened for drugs every nine days. The DCFS worker testified on cross examination that, while she was aware of these steps taken by W.W., they "do not meet the requirements of the agency." He also testified that he expected to be released within five weeks of the date of the hearing.

This case presented an impossibility for W.W. Because of his incarceration, he could not work his case plan, visit his child, or provide parental contributions to the support of his children, and DCFS failed to comply with the provisions of La.Ch.Code art. 1036.2 to allow W.W. an alternate means of preventing the

9

department from seeking termination of his parental rights. We find the trial court committed manifest error in finding the state proved sufficient grounds for termination in this case. We reverse the judgment of the trial court terminating W.W.'s parental rights to C.W. and T.W. Nevertheless, the minor children should remain in the custody of the state as children in need of care while W.W. is given an opportunity to work a case plan approved by the trial court.

## CONCLUSION

The judgment of the trial court terminating the parental rights of the father, W.W., is reversed, and the case is remanded for proceedings consistent with this opinion.

**REVERSED AND REMANDED.**